# CHARLESTON.

1873.
January
Term.

## NEWLIN *vs.* BEARD, ET AL.

CYRUS NEWLIN, PLAINTIFF IN THE ACTION AND PLAINTIFF IN ERROR, AGAINST ANDREW BEARD AND GEORGE BROWN, DEFENDANTS IN TAE ACTION AND DEFENDANTS IN ERROR.

Decided February 21st, 1873.

## SYLLABUS.

1. The *burden of proof* of the formal execution of a deed or bond, when put in issue under the plea of *non est factum*, rests upon the party claiming under the deed or bond; and that proof must show that the deed or bond was signed sealed and delivered by the authority of the obligor as his deed.

2. Possession of the bond, or deed, by the obligee, is *prima facie* evidence of delivery: and where the Defendants admit the signing and sealing, the rule of evidence is sufficiently complied with by the Plaintiff when he produces before the jury the instrument, and it is then incumbent on Defendants to show some special matter in evidence.

3. A deed, or bond, signed, sealed and delivered to the obligee, or his previously constituted agent, upon condition, is not the deed of the party signing, until the condition is complied with.

4. Under the statute, Code ch. 130, ₴28, a party to a civil action may be a witness in behalf of himself, or of any other party, to prove the conditions upon which a bond was delivered.

5. Beard executed a bond, and delivered it to Newlin as his deed; N. sometime afterwards handed the bond back to Beard, and re-

quested him to procure the signatures of certain other persons.
HELD,

1. N. thus constituted B. his agent for the purpose of obtaining the signatures.

2. The party signing, and delivering the bond, under those circumstances, to the agent, upon condition, can, under the plea of *non est factum*, prove by the agent, or himself, the agency, and the condition upon which the delivery was made to the agent.

3.. The condition made known to the agent, at the time of delivery to him, is notice to the principal, and he is bound by it.

6. A statement made by the Court in the presence of the jury, which does not prejudice the rights of the Plaintiff in the action, although improper, is not such error as would justify an Appellate Court in reversing the judgment.

7. An exception to the opinion of the Court, refusing a new trial, *states all the evidence introduced on the trial, instead of the facts proved.* The Appellate Court will not consider the parol evidence of the exceptor, so far as it is conflictory with that of the Appellee; and when the evidence thus viewed does not show that the verdict was contrary thereto, the judgment should not be reversed and a new trial awarded.

This is an action of debt from the Circuit Court of Greenbrier county. The defendant, Beard, retained the Plaintiff as his attorney to defend an action against him and others, of whom the defendant, Brown, was one, his sureties on a bond executed to James Jarrett. The contract upon which this action was brought is as follows:

Andrew Beard having retained Cyrus Newlin as counsel to defend him in an action of debt, instituted against him and others in the Circuit Court of Greenbrier county, in which James Jarrett, Jr., suing for the benefit of James Jarrett, Sr., claimed $6,000 to be due by bond, with interest from the 17th day of February, 1862: Now, if the said Cyrus Newlin shall successfully defend the said suit and procure a verdict or judgment in favor of said Andrew Beard and others, we, and each of us, promise and oblige ourselves, our heirs, &c., to pay to the said Cyrus Newlin the sum of fifteen hundred dollars ($1,500); conditioned, however, upon such

1873.
January
Term.

Newlin,
v.
Beard, et al.

verdict or judgment being affirmed, should there be an appeal taken within one year to the Court of Appeals.

And it is further promised and agreed that should the said suit be settled by compromise, or otherwise than by ordinary course of Law, that the said Cyrus Newlin shall receive one-third of the amount said debt may be reduced, such sum in no case to exceed the sum of $1,500 before mentioned.

Witness our hands and seals this 16th day of September, 1867:

A. BEARD.   [SEAL.]

GEORGE BROWN,   [SEAL.]

——— ———   [SEAL.]

There were two pleas filed: payment, and *non est factum* by the defendant Brown.

It was admitted by the Defendants that the signatures to the bond in suit were genuine; that the suit of Jarrett *vs.* Beard, et als, had been settled by compromise and that the consent judgment therein entered was for an amount less than the amount claimed by more than $4,500; that the obligation upon which this action was founded was given in consideration of services to be rendered by the Plaintiff in the defence of said suit of Jarrett *vs.* Beard, et als, and that the Plaintiff had discharged all the duties required of him by his contract.

All of the evidence related to the plea of *non est factum*—Four bills of exceptions were taken which contain statements of the testimony of the witnesses and not of the facts proven. There was a verdict for the Plaintiff upon the issue raised by the plea of payment and for the defendant Brown, upon the issue presented by the plea of *non est factum*.

It appears that the defendant Beard employed Newlin as an attorney and executed to him the above obligation; that afterwards the Plaintiff applied to Beard to have this obligation signed, according to the testimony of the Plaintiff, by *one* or *two* of his sureties on the Jar-

rett bond, according to the testimony of Beard by *his sureties* on the Jarrett bond; that Beard took the obligation and presented it to his co-defendant Brown, who signed it on condition that it should be signed by all the other sureties on the Jarrett bond; that the other sureties refused to sign it and it was then returned to Plaintiff. Nothing was said at the time the obligation was returned to the Plaintiff as to all the obligors on the Jarrett bond being required to sign the obligation, nor was anything on this subject said until after the settlement of the Jarrett suit.

The Plaintiff moved the Court to exclude from the jury all evidence relating to the condition or agreement on which the defendant Brown signed and delivered the instrument in suit to his co-defendant Beard. Whereupon the Court stated, in the hearing of the jury, that in consideration of the evidence that had gone before, in reference to the Plaintiff's requesting the defendant Beard to procure the signatures of the obligors in the Jarrett bond to the writing sued on, when he returned with but one of the signatures it was sufficient to put the Plaintiff upon enquiry before accepting the delivery of the same from Beard.—To the opinion of the Court overruling said motion, as well as to the said statements of the Court, the Plaintiff excepted.

The Plaintiff moved the Court to set aside the verdict and grant a new trial, which was overruled.

*F. J. Snyder* for Plaintiff in error.

Deeds which are on their face complete contracts requiring nothing but delivery to make them operative and final, cannot be delivered as an escrow except to one who is a stranger to the instrument, unless the condition upon which it is delivered be made known to the obligee before he accepts the instrument. Co. Litt. 36 a; Shep. Touchs. 57; Thoroughgood's case, 9 Rep.,

136; Ward *vs.* Churn, 18 Gratt., 807; Hicks *vs.* Goode, 12 Leigh, 479; Stuart *vs.* Livesay, 4 W. Va., 45; Smith *vs.* Moberly, 10 B. Monroe, 266; Millett *vs.* Parker, 2 Metc. (Ky.), 615; Webb *vs.* Baird, 27 Ind., 368.

In the case of Pawling *vs.* The United States, 4 Cranch, 219, names of persons who failed to join in the execution, were inserted in the body of the bond; and it does not appear that the delivery was to a party to the instrument.

Assuming an agency on the part of Beard for Newlin to procure the signature of Brown, such agency was a strict and special one, determining when the signature was obtained. For the purpose of rendering any conditions effectual, Beard must then be regarded as the agent of Brown to communicate to Newlin the qualification of Brown's liability.

The statement made by the Judge in the hearing of the jury was a virtual decision upon the issue of fact between the parties and a trespass upon the province of the jury. McDowells *vs.* Crawford, 11 Gratt, 377; Whitacre *vs.* McIlhaney, 4 Munf. 310; Brook *vs.* Young, 3 Rand., 114; Gregory *vs.* Baugh, 2 Leigh, 665; Moore *vs.* Chapman, 3 H. & M., 266.

The question objected to by Plaintiff was leading, and the witness should not have been permitted to answer it.—1 Greenl. Ev. §434. It was moreover irrelevant and upon that ground objectionable.—1 Greenl. Ev. §52.

*Harris* for Defendant in error.

The broad principle laid down in Touchstone and some of the earlier authorities, that the delivery of a deed to be good as an escrow must be made to a stranger, is not now the law. Two exceptions to the rule are clearly recognized by nearly all the modern authorities, viz.:

1st. Where the delivery is to the obligee, and the condition upon which it is to take effect is made known

to him at the time of delivery.—Ward vs. Churn, 18 Grat. 813; Livesay vs. Stuart, 4 W. Va. 45; and

2nd. Where the instrument is imperfect or incomplete upon its face, or denotes that something more besides delivery is to be done to make it a complete instrument.—Ward vs. Churn, 18 Grat. 812; Hicks vs. Goode, 12 Leigh, 479; Pawling vs. U. S., 4 Cranch, 218.

It has always been held that when a deed is delivered to a stranger as an escrow, and by him delivered to the obligee, without any knowledge on the part of the latter of the non-performance of the condition upon which it is to take effect, the obligor is not precluded from showing that it was delivered on condition, and that the condition has not happened; and the reason why the obligor is not estopped by his deed is, that the stranger making the delivery had no right to deliver it until the condition happened. It is a question of power, and the obligee must look to it, that the party who delivers it had the right to do so. Once admit, therefore, that a deed may be delivered as an escrow to a party to the instrument (and this doctrine is now well established), and especially to a co-obligor, as was the case here, and there would seem to be no good reason why the obligee should not be bound by the condition as fully as where the delivery is to a stranger. The rights of obligors are several and distinct, and oftentimes antagonistic, and the rights of one should not be jeopardized by the unauthorized acts of another. Such was the whole course of the reasoning employed in Ward vs. Churn, supra. And so, it might well be claimed in this case that when we so far depart from the ancient rule, as to hold that there may be a good conditional delivery to a co-obligor, all the results of the ancient rule necessarily follow; but it is not deemed necessary to do more than apply the facts before us to the two well settled exceptions above mentioned.

1. It is submitted that Newlin had notice of the condition, on the familiar principle, that notice to his agent

was notice to him. And if his agent had notice, Newlin's assent to the condition will be presumed by his acceptance, and he will not be allowed to repudiate it. Beard's delivery was absolute; Newlin accepted the bond as a settlement of the matter of his fee; and the whole transaction was final and complete. After this, however, he concludes that it is better to get some further security, if he can, and he requests Beard to go to these other parties and see if he can get them to go on the bond. Newlin, then, employed him as his agent, and imposed no restrictions upon his authority, and therefore, on the familiar principle, *qui facit per alium, facit per se*, assented to the condition, and cannot repudiate it.—Livesay *vs.* Stuart, *ubi supra.*

2. Conceding, for the sake of the argument, that Beard was not such an agent of Newlin's as to bind the latter to the extent claimed, the circumstances under which Newlin procured Brown's signature and received the bond, assimilates the case so nearly to one in which an instrument imports that something more is to be done to make it perfect, as to require the application of the same rule here which governs there. The principle on which this rule rests is, that where the obligee receives an instrument which is imperfect upon its face, it puts him upon enquiry. Such a paper gives rise to the presumption that the original intention of the parties has not been carried out. It is a circumstance which would naturally excite enquiry; and such enquiry as would develop the facts, and disclose the condition. A party who thus neglects the precautions which such a paper would so reasonably suggest, is precluded from saying that the facts shall not be disclosed. There is all the more reason for enquiry, as Joynes J. says in Ward *vs.* Churn, where the paper is presented by the obligor to the obligee, for he has a manifest interest to deliver it without the names of the other parties, which he may not be able to get.

Now, apply the same reasoning to the case before us: Newlin had made his bargain with Beard, and had taken his bond for the fee. Long afterwards, becoming doubtful, as we may infer, of Beard's solvency, he asks him, not in a general way to secure his fee, but to go to the sureties in the Jarrett bond and get them to go on this bond; and after Beard undertakes to do it, at his request, and returns with the signature of Brown only, he receives the bond without making a single enquiry with regard to the matter. The others were equally interested in the suit, and he had sent Beard to obtain their signatures, but he does not ask why it is that he has returned with the name of one only, and that of a party who had never spoken to him about the matter, and, as far as we can see, was giving no attention to the suit. Beard had every inducement to suppress the truth,—it was an important case, and he wanted to satisfy his attorney—and yet, with all these facts before him, facts that would naturally suggest enquiry to the least prudent and suspicious man, Newlin asks not a word about it. Suppose that the bond had contained in the body of it the names of Beard, Brown and Renick, and the bond had been returned to him without the signature of Renick opposite the seal which was left for it, then, under the decision in Hicks *vs.* Goode, he would have been bound by the condition with which Brown had signed, even if there were nothing else to put him on enquiry than the face of the bond. Did not the circumstances under which it was received put him upon enquiry to a much greater extent than so trivial a fact as that would have done? And enquiry would have disclosed the condition on which Brown had signed.

3. The Court did not err in refusing to grant a new trial. The evidence of the Plaintiff conflicts with that of the Defendant, and it was for the jury to decide. And in addition to this, the bill sets forth the evidence and not the facts proved, and it is the well established doc-

1873.
January
Term.

Newlin.
v.
Beard, et al.

trine of this Court, that it will not reverse the decision of a lower Court in such a case, unless after rejecting all the parol evidence of the Plaintiff and giving full faith and credit to that of the defendant, the decision of the Court below would still be wrong.—Sanaker *vs.* Cushwa, 3 W. Va., 29; 21 Grat. 162-3; 17 Grat. 445.

4. The statement of the Court complained of was made to counsel in explanation of its ruling. Even though made in the hearing of the jury, it could not, under the circumstances of this case, have operated any injury to the Plaintiff. Moreover, the rule generally obtains that these remarks may be made directly to the jury, if the question of fact is, notwithstanding, left entirely to them.—Baker *vs.* Lewis, 4 Rawle, 356; Poorman *vs.* Smith, 2 S. & R., 467; Durkee *vs.* Marshall, 7 Wend. 312; Gardner *vs.* Pickett, 19 Wend. 186; Gardner *vs.* Tiffany, 34 N. Y. 433; Dow *vs.* Rush, 28 Barb. 157; Carver *vs.* Jackson, 4 Pet. 80. The English books contain numerous cases to same effect. Although the rule is more strictly drawn in Virginia, the case of McDowell *vs.* Crawford, 11 Grat. 377, was decided by a divided Court, and was, moreover, a case in which the Court declared that certain evidence offered was too remote, vague and indefinite to support the Defendant's plea. The cases are not analogous; and no case can be found to sustain, under the state of facts disclosed by the record, the position assumed by the Plaintiff.

MOORE, JUDGE:

The points assigned as error in this case arose in the trial of the issue upon the defendant Brown's plea of *non est factum.* The Appellant insisted that the Court erred.

" 1st. In permitting the witness Beard to testify as stated in Plaintiff's first bill of exceptions, and in permitting the witness Brown to testify under the same circumstances, as stated in Plaintiff's second bill of exceptions.

" 2d. In refusing the Plaintiff's motion to exclude the evidence referred to in Plaintiff's second bill of exceptions, and in making, upon the decision of that motion, the statement to the jury set out in said bill of exceptions.

" 3d. In overruling the Plaintiff's objection to the question by Defendant set out in Plaintiff's third bill of exceptions.

" 4th. In denying the Plaintiff's motion for a new trial."

It appears from the Record that the writing obligatory, sued on by Newlin, was signed by the said Beard and Brown ; and upon trial of the issue arising on the plea of *non est factum*, Brown introduced not only Beard, his co-signer and co-defendant, but also himself, to prove that he had signed and delivered the instrument sued on to his co-defendant Beard, on condition that certain other persons should sign it.

The Plaintiff objected to the introduction of any evidence respecting conditions on which Brown signed, or executed the instrument, unless Brown proposed to connect it with evidence, showing that the Plaintiff was apprised of such conditions before delivery to him of the instrument as the deed of the parties who had signed it; or " it were first decided, that the said instrument indicated on its face that it was not intended to be a complete contract at the time of its final delivery." The defendant, Brown, proposed to show either that Beard was acting as the duly authorized agent of Newlin in procuring the signature, or that Newlin was in possession of such facts at the time of the delivery, by Beard, of the said instrument to him, as would put him upon enquiry as to the terms upon which Brown had signed it. The first bill of exceptions, from which I quote *verbatim*, states that, " Plaintiff then further objected upon the ground that if the Defendant relied upon the evidence thus proposed to be introduced by him, such evidence

should first be introduced, and no reason was stated why said evidence could not be introduced at this stage of the trial; but the Court, in view of the said statements of counsel and the evidence already in the cause, overruled the Plaintiff's said objections and permitted the witness to state the conditions on which the defendant Brown signed said bond, without deciding that said bond was not complete and perfect on its face."

It is the established rule, that the *burden of proof* of the formal execution of a deed, when put in issue under the plea of *non est factum*, rests upon the party claiming under it; and that proof must show that the deed was signed, sealed and delivered by the obligor as his deed. Pursuant to said rule, the Plaintiff in this case, to sustain the issue on his part, offered to introduce evidence showing the instrument declared on to be the deed of the Defendants, whereupon the Defendants admitted the signatures thereto to be their proper signatures. The Plaintiff then read the instrument to the jury, in evidence. The Plaintiff having, therefore, complied with the rule on his part, by introducing the writing obligatory, and showing, by the admission of the Defendants, that it was signed and sealed by the Defendants, and the possession of the instrument by the obligee, being in the absence of opposing circumstances, *prima facie* evidence of its proper delivery to him, it was then incumbent on the defendant Brown in order to sustain the issue on his part, to show some special matter in avoidance of the deed. That was the object of Brown when he offered to introduce Beard and himself as witnesses. If he could show that he had signed, sealed and delivered the instrument upon condition, either to the obligee or to the obligee's previously constituted agent, and that condition had not been complied with, certainly, the authorities are conclusive, that he should not be held liable as an obligor, and rightly so, because under no intendment could it be his deed until the conditions were fulfilled.

1873.
January
Term.

Newlin,
v.
Beard, et al.

Under our Statute, Code, ch. 130, s. 23, not only Beard but Brown were admissible as witnesses, and it was proper to prove by them the conditions upon which Brown signed, sealed and delivered the instrument. The objection made by the Plaintiff that evidence respecting the conditions on which the instrument was executed, by Brown, should not have been admitted, unless, connected "with evidence showing that the Plaintiff was apprised of such conditions before complete and final delivery to him of the instrument as the deed of the parties who had signed it; or it were first decided that the said instrument indicated on its face that it was not intended to be a complete contract at the time of its final delivery;" was made by the Plaintiff after the witness. Beard had testified as follows: "I employed Newlin upon the terms mentioned in this agreement, upon which he is now suing. He drew it up and I signed it, and Newlin took possession of it. How long Newlin had it I cannot say, but he had it for some time. He then had a conversation with me, and asked me if I could get as security my securities on the Jarrett bond,—I told him I did not know whether I could get them to go upon the bond or not, as they had nothing to do with my employing him and did not know of it at the time. Newlin requested me to get their signatures. On the Jarrett bond I was principal and the other obligors my sureties. After this request, Newlin brought the bond in suit to me and I took it, at his request, to see these gentlemen. The first one I went to see was George Brown, who signed it on condition."

Now if it is true that, "The *delivery* of a deed is complete, when the grantor or obligor has parted with his dominion over it, *with intent that it shall pass to the grantee, or obligee;* provided the latter assents to it, either by himself or his agent," "and that the delivery may be complete, without the presence of the other party, or any knowledge of the fact by him, at the time, if it be made

16

to his previously constituted agent," (and such is the doctrine laid down by Prof. Greenleaf, upon authority cited in his treatise on the Law of Evidence, vol. 2, §. 297, and notes,) it seems to me the Court did not err in overruling the Plaintiff's objection, but did right in permitting the defendant, Brown, thus to present the opposing circumstances, necessary to repel the *prima facie* evidence of delivery created by the obligee's possession of the instrument. Had the defendant Brown parted with his dominion over it, *with intent* that it should pass to Newlin? If so, the delivery was complete, and the *factum* established, as he had already admitted the signing and sealing : But *contra*,—suppose he had not parted with his dominion over it, *with intent* that it should pass to Newlin, was it not proper to permit him to establish the *non factum*, by the introduction of any evidence showing he did not intend it to pass to Newlin, as his deed until certain conditions had been complied with? It is true, knowledge of the conditions imposed must be brought home to the obligee, and that may be done either by the face of the instrument itself, or by direct communication to the obligee or his agent previously constituted for the purpose of obtaining the signatures, of the intention of the parties at the time of delivery. If the instrument upon its face indicates that it is not complete, according to the intention of the parties, it puts the obligee on his guard, and if he does not heed the warning, and make the necessary enquiry to satisfy himself that the original intention of the parties had been relinquished, he accepts it at his risk and must abide the consequences. " If he fails to make such enquiry, and accepts the paper from the principal obligor, or from any one of the co-obligors, he has no right to complain if he is met by a plea, from another of the obligors, that he signed and delivered the paper upon the condition indicated on its face." Ward, et als, *vs.* Churn, 18 Gratt. 812. But, "when the instrument is delivered directly to the obligee, the delivery cannot be regarded as condi-

1873.
January
Term.

Newlin,
v.
Beard. et al.

tional in respect to the party who makes it, unless the condition is made known to the obligee. * * * * If the delivery is upon a condition made known to the obligee, his assent to it will be presumed from the acceptance of the instrument, and he will not be allowed to repudiate the condition thus assented to, and to treat the delivery as absolute and unconditional." (*Idem* 813.) If, however, the instrument is delivered to a third person, not a party to it, to take effect as a bond upon the happening of some event, or the performance of some condition, and that person " delivers it to the obligee before the event happens or the condition is performed on which he was to deliver it, it will not take effect. And it matters not that the obligee had no knowledge of the condition which the party attached to the delivery of the escrow. The condition is valid, whether known to the obligee or not." (*Idem* 810.) If the instrument is on its face complete and perfect, according to the intention of the parties, and delivery is made to the obligee, or his previously constituted agent, without notice that it is conditional, the obligee is not required to make enquiry whether it is the deed or bond of all the signers, or any of them, because it is presumed that all the obligors authorized its delivery, and he has the right to treat it as absolute and unconditional. This view of the law, it seems to me, is the reasonable inference to be drawn from the review of the many authorities made by the learned Judges, respectively, in the cases of Deardorff, et als *vs.* Foresman, 24 Ind., 481 ; State *vs.* Peck, 53 Maine 284, and Ward, et als *vs.* Churn, 18 Gratt., 801. If, therefore, I am right in this deduction of principles as establishing the rule, it is only necessary to consider, whether Beard could be Newlin's agent in procuring the signature of Brown to the instrument?

It is true, in general, that the character of agent for one party to a contract, and that of principal upon the other part, are incompatible.

"The law, indeed," (says Ray, Judge, in Deardorff, et als, *vs.* Foresman, above cited,) makes the principal, for a special purpose, *i. e.*, the delivery of the instrument, the agent of his sureties." That being so, it seems to me reasonable, that the obligee could constitute the principal his agent to procure additional signers to the instrument, especially so, after the instrument had been signed, sealed and delivered to the obligee, and accepted by him as the bond of the principal alone, and held by him as such for a considerable length of time. For by the delivery to the obligee, the principal had parted with his dominion over the instrument, with intent that it should pass to the obligee, and was under no obligation to obtain additional signers, and had no right to, and no authority over it. All that was left to him that could be peremptorily demanded by the obligee, was a duty to perform, and that was to pay the obligation when due. The acceptance of the instrument by the obligee, with the signature of the principal alone, was a release of the principal from any demand for sureties thereon; the dominion was absolutely in the obligee, a right only to demand of, and enforce payment from the obligor, when the obligation was due. If, therefore, he returns to the obligor the instrument, with a request, or direction, that he procure other signers thereto, and the obligor receives it for that purpose, it seems to me conclusive that the obligor is for that purpose constituted the agent of the obligee, as much so as if he had been a stranger, or no party to the instrument; and any delivery upon condition, made to the agent by the party who signs the instrument, when thus presented to him by the agent, pursuant to the request of the obligee, will bind the obligee; and the instrument cannot take effect until the condition is performed, because notice to the agent, under such circumstances, is notice to the obligee; and if the obligee attempts to recover on the bond, the party who made the conditional delivery to the agent has the right to defend by pleading *non est factum*, and proving by the

1873.
January
Term.

Newlin,
v.
Beard, et al.

agent himself the agency, and the conditional delivery. I am, therefore, of opinion that the Court did not err in overruling the Plaintiff's objections stated in the first bill of exceptions; and for the same reasons, I think the Court did not err in overruling the Plaintiff's motion to exclude the evidence, as stated in the second bill of exceptions, and the objection made to the question as stated in the third bill of exceptions.

The Court, in overruling the Plaintiff's motion " to exclude from the jury all evidence relating to the condition or agreement on which the defendant Brown signed and delivered the instrument in suit to his co-defendant Beard," stated, in the hearing of the jury, "that in consideration of the evidence that had gone before, in reference to the Plaintiff's requesting the Defendant Beard to procure the signatures of the obligors in the Jarrett bond, to the writing sued on, and when he returned with but one of the signatures it was sufficient to put the Plaintiff upon enquiry before accepting the delivery of the same from Beard; therefore, the Plaintiff's motion to exclude said evidence from the jury must be overruled by the Court." The Plaintiff excepted to such statements being made in the hearing of the jury by the Court. The question now arises, whether the Court erred in making such statements in the hearing of the jury, and if so, should the judgment be reversed for that error?

In the case of McDowell's Ex'or. vs. Crawford, 11 Grat. 402, which was decided by a divided Court, Judge Moncure in giving the opinion of the Court, says: "It is a fundamental maxim, that the Court responds to questions of law, and the jury to questions of fact. The Court must decide as to the admissibility of evidence, that being a question of law; but not as to its weight after it is admitted, that being a question of fact. The cases in this Court in affirmance of this position are too numerous to be cited. Most of them are collected

in 1 Rob. Pr. 338-344. As the author says, they 'evince a jealous care to watch over and protect the legitimate powers of the jury. They show that the Courts must be very careful not to overstep the line which separates law from fact. They establish the doctrine that where the evidence is *parol*, any opinion as to the *weight, effect* or *sufficiency* of the evidence submitted to the jury; any assumption of a fact as proved, or even an intimation that written evidence states matter which it does not state, will be an invasion of the province of the jury.' "—(11 Grat. 402).

In admitting or excluding evidence, I concede the authorities guard closely the line of demarkation between law and fact, and watch with jealous eye the encroachment of the Court on the province of a jury; but, whilst they do not sanction opinions of the Court as to the "*weight, effect,* or *sufficiency* of evidence" on matters material, or such as would influence a jury to the prejudice of a party, yet, the doctrine is not so rigid in its application to opinions, or statements of the Court on points immaterial, or such as cannot operate injury to a party. In such case it is not error for which an Appellate Court will reverse a judgment. (Pitman *vs.* Breckenridge & Crawford, 3 Grat. 127; Colvin *vs.* Menefee, 11 Grat. 87; Cricket *et al. vs.* The State of Ohio, 18 Ohio S. R. 9).

In the case before us, the statements of the Court, although, perhaps, improper to have been made within the hearing of the jury, yet, in view of the case as taken in this opinion, holding the law as herein stated, applied to the facts of the case, could not have prejudiced the Plaintiff, and therefore there is not such error as would justify an Appellate Court in reversing the judgment.

The 4th and last assignment of error is, "in denying the Plaintiff's motion for a new trial,"

In this case, as in that of Bennett *vs.* Hardaway, Administrator of Jones, 6 Munford, 125, the bill of excep-

8173
January
Term.

Newlin,
v.
Beard, et al.

tions does not state on what ground the motion for the new trial was made, but as the evidence of the Plaintiff (the exceptor) is, (except as to the agency of Beard to procure the signatures), contrariant and contradictory to that of the Defendant, the inference is that the motion was made upon the ground that the verdict was contrary to evidence. Under the authority of that case, followed by Green *vs.* Ashby, 6 Leigh 135; Ewing *vs.* Ewing, 2 Leigh 337; Rohr *vs.* Davis *et als*, 9 Leigh 30, and Pasley *vs.* English, *et als.*, 5 Grattan 141, the Appellate Court cannot consider the parol evidence of the Appellant, so far as it is conflictory with that of the Appellee; and as the evidence, thus viewed, does not show that the verdict was contrary thereto, the ruling of the Circuit Court must be sustained.

The judgment should be affirmed with costs and damages.