# Richmond.

Dunsmore v. Lyle.

January 29th, 1891.

1. Specific Performance—*Principles.*—When valid contract for sale of land is made, equity considers buyer as owner, seller as trustee, and as to the money, *vice versa.* All applications for such relief are to court's sound discretion regulated by its principles. Contract must be reasonable, certain, legal, mutual, upon valuable or meritorious consideration, and distinctly proved; and applicant must have been ready, prompt and eager. Purchaser cannot be compelled to take defective title, but seller may be to convey what title he has, and compensate for defect. This remedy falls under statute of frauds, declaring void all contracts for land not written and signed by party sought to be charged. No such relief can be had unless contract is actually concluded. Where contract is embodied in formal document, executed by both parties, little difficulty can occur as to whether it was concluded or not. If doubtful whether concluded or not, the court will refuse specific performance, and leave parties to their rights at law.

2. Idem—*Case at bar.*—Circumstances disclosed by the record show that no binding contract was ever made between the parties, but the negotiations were *in fieri,* and neither contemplated a sale subject to the wife's dower rights, and specific performance cannot be granted.

Argued at Staunton.   Decided at Richmond.

Appeal from decree of circuit court of Augusta county, rendered June 18th, 1890, in a suit wherein the appellant, Dunsmore, was complainant, and the appellee, Lyle, was defendant, for specific performance of an alleged contract for the sale of a tract of land, belonging to Lyle, to the defendant.

At the hearing, upon the demurrer, answer and plea of defendant, and the depositions taken on both sides, the bill was dismissed, whereupon the plaintiff obtained an appeal from the decree.   Opinion states the case.

*White & Gordon,* for the appellant.

——— ———, for the appellee.

LACY, J., delivered the opinion of the court.

The bill was filed by the appellant against the appellees to enforce specific performance of an alleged contract for the sale of a tract of land belonging to the said Lyle, to the appellant, Dunsmore.

Upon the hearing, upon the demurrer, answer, and plea of the defendant, and the depositions taken on both sides, the circuit court dismissed the bill of the plaintiff, whereupon he applied for and obtained an appeal to this court.

The principles upon which courts of equity decree specific performance of contracts for the sale of real estate are well understood and familiar to the profession, yet it will be convenient, in the view we have taken of this case, to briefly recur to first principles; and we will remark that it is one of the principles of equity that it looks upon things agreed to be done as actually performed; and, consequently, as soon as a valid contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as a trustee for him; and, on the other hand, it considers the seller as the owner of the money, and the buyer as a trustee for him. And when a contract has been made, and either party refuses to perform the agreement, equity enforces the performance of the contract specifically, by compelling the refractory party to fulfil his engagement according to its terms. Thus, if the

vendor refuses to convey, equity will decree a conveyance, and attach him until he makes it.

All applications to the court to compel specific performance, however, are addressed to the discretion of the court—a sound judicial discretion, regulated by the established principles of the court—and the contract must not only be distinctly proved, but it must be clearly and distinctly ascertained; it must be reasonable, certain, legal, mutual; upon valuable, or, at least, meritorious consideration, and the party seeking specific per - formance must not have been backward, but ready, desirous, prompt, and eager.

While a purchaser, however, cannot be compelled to take a defective title, but has a right to insist upon a clear legal title, on the other hand, though the vendor cannot make the title he contracts to make, yet he may be compelled to convey such title as he has, and to compensate for the defect; nor does it lie for him to object for the want of a complete title in him.

The remedy of specific performance of contract for the sale of real estate, to which it chiefly relates, falls within the influ- ence of the statute of frauds, which declares void all contracts for land which are not reduced to writing and signed by the party sought to be charged.

No proceedings in specific performance can, of course, be had, unless it is shown that a contract has actually been con- cluded. If the arrangement come to was in its nature merely honorary, or if the matter still rests in treaty, no specific per- formance can be granted.

On the other hand, however, when the contract is embodied in a formal document, simultaneously entered into by both parties, little difficulty can occur as to whether the contract was concluded. But this question frequently arises when a contract is alleged to have been constituted by the negotia- tions of the parties.

If, however, it be only doubtful whether the contract was concluded, or still remained open, the court will refuse specific

performance, and leave the parties to their rights at law. *Owen* v. *Davies*, 1 Ves. Sr., 82.

In this case the appellant and the appellee had many negotiations and a great deal of discussion about the sale and purchase of the land in question, running through a great space of time, before there is any claim that any agreement had been come to, all of which is spread out *in extenso* in the record, but which will be passed over as irrelevant matter.

It amounts only to the circumstance of a seller exceedingly anxious to sell, and indiscrete in constant agitation of the matter with a coy buyer, who, while equally anxious to buy possibly, contented himself with an apparent good-natured indulgence of his impulsive acquaintance and friend in his importunities, and, while looking at other lands, and appearing indifferent to the land ultimately in view, availed himself of such casual opportunity of inspection as presented itself, until the seller was brought, while walking in the street, to a proposal, which was accepted by the words, "I will take it."

No written agreement was entered into, but the seller agreed to draw a deed and get his wife's signature to it. Upon application to the wife to consent to and join in a conveyance of the land, she showed great unwillingness and much distress, and the seller thereupon notified the buyer of the impediment in his way, but promised to do what he could, by persuasion, to bring his wife over; there was no proposal on either side to conclude matters at this time without the consent of the wife of the seller.

But the seller, by way of bringing his wife to agree to his wishes, prepared a deed, and asked his wife to sign and acknowledge it. But at this point the wife dried her tears, and flatly refused to do so, and declared her purpose to stand upon her legal rights in the premises, and not consent to any sale of her home.

The purchaser, learning this, now proposed to pay the cash payment and get the deed, &c., &c., as a means to bring the

wife over; but there was no proposition to accept a deed subject to the wife's contingent right of dower.

The appellee (the seller) here took a decided stand, and declined to do this, saying that he had never proposed to use coercion on his wife—he had persuaded, but would do nothing more. The rupture came speedily; Lyle declined further negotiations, and Dunsmore brought his suit.

The first question to be considered in this case is, whether any binding contract was ever made between the parties—that is, whether such contract has been proved in this suit. The burden of proof is, of course, upon the plaintiff. From his volumious statement, answers to interrogatories, cross-interrogatories, may be fairly sifted out the assertion on his part of a definite and final contract, afterwards reduced to writing in the form of a deed signed by Lyle, and a letter is produced from Lyle declaring his inability to make the sale, on account of his wife's opposition. But, on the other hand, Lyle declares distinctly that all their negotiations were subject to the question of his wife's consent; that he had never proposed to sell without it, and Dunsmore had never agreed to buy without it. The testimony of one may be offset against that of the other, and, as we have seen, the contract must be established by a preponderance of evidence on the part of the plaintiff.

I do not think from the evidence in this cause that either party, during all their negotiations, ever contemplated any sale subject to the wife's contingent right of dower, and, as we have seen, if it be only doubtful whether the contract was concluded, or still remained open, the court will refuse specific performance, and leave the parties to their rights at law. When Lyle informed Dunsmore that his wife was distressed and tearful and unhappy, and could not be brought to his views, Dunsmore does not pretend that he offered to take the deed without the wife's concurrence. He says himself, to use his elegant language concerning this unhappy wife, that he said to Lyle's son; "Your step-mother is kicking, is she?"

He did not say, as he says now: "Oh, that is of no conse-
quence; let us go on and complete the sale, and, seeing that all
is done, she may then *consent*." His desire was to bring about
this wife's consent in *some way*. This sustains—certainly does
not contradict—Lyle's statement that his proposal was depen-
dent upon his wife's consent, as it surely ought to have been.
And before a court of equity should compel a husband to sell
in disregard of his wife's wishes, it is necessary, at the least, to
prove that he has in some binding form agreed to do so, which
is not proved in this case.

But we must remember that we have already said that an
application of this sort is addressed to the sound judicial dis-
cretion of the court, and that the ground of the jurisdiction
here invoked is to remedy some mischief or grievance not re-
lievable by a court of law. If this husband had obtained
any money or other advantage of this purchaser, or in some
way injured him in a manner not to be compensated in dam-
ages, or had in some wise defrauded him of any just rights, the
court might entertain the proposal for its remedial hand *to at-
tain the ends of justice.* But the appellant has paid no money
—had his situation in no way changed; he is balked in his
new-born fancy to have this woman's home—that appears to
be the extent of his grievance. And I am of opinion that
there is nothing contained in the application which commends
itself to the favorable consideration of this court. In what
way is his desire to have a home any more sacred than this
wife's desire to retain her home?

The appellee, Lyle, does say, in the letter above mentioned,
that he feels very badly, and that he had never been so taken
down in his life, and that he felt like he wouldn't want to face
the public again, &c., if his wife persisted. He had realized
that now men would see that he could not manage matters at
home, perhaps, as he desired, and there seems to have been
some feeling of humiliation about it; but, so far from this be-
ing any discredit to him, it is far more to his credit as a hus-

band and as a man that he yielded to his wife's feelings and wishes, than, if to save this feeling of humiliation to himself, he had yielded to the proposal of Dunsmore, and provided him, so far as he could, with the means of breaking the ties which bound his wife to their home.

It is not only not proven that any binding contract was ever made between these parties, but the fair conclusion from the whole case is that these negotiations were merely *in fieri*, and that neither party ever contemplated any agreement subject to the wife's contingent right of dower being retained by her. And in this case there is no grievance to redress; no contract has been proved, and the circuit court was right in dismissing the plaintiff's bill, and the decree complained of and appealed from will be affirmed.

DECREE AFFIRMED.