# WHEELING.

### DORR v. MIDELBURG.

Submitted March 30, 1909.   Decided June 11, 1909.

1.   DEEDS—*Evidence—Conditional Delivery.*

  If a deed for land, absolute and complete on its face be de-
  livered by grantor to grantee, as an escrow, to take effect in any
  event, the condition is void and the deed becomes absolute, and
  the title passes immediately to the grantee on the delivery
  thereof, and the condition of the delivery of the deed cannot
  be shown by parol evidence thereof so as to defeat the deed.
  (p. 785.)

2.   VENDOR AND PURCHASER—*Executed Contract—Rescission.*

  No question of identity of the subject matter of the con-
  tract being involved, a court of equity will not, at the suit
  of the vendor, set aside or rescind in its entirety an executed
  contract of sale of several lots of land simply because it turns
  out that the vendor had no title to one or more of the lots con-
  veyed.   In such case the vendee may elect to affirm the contract
  as to   the lots to which the vendor had title and recover a
  proper proportion of the purchase money paid for the lot or lots
  of land lost for want of title of the vendor.   (p. 786.)

Appeal from Circuit Court, Kanawha County.

Bill by C. P. Dorr against A. Middelburg.   Decree for defend-
ant, and plaintiff appeals.

*Affirmed.*

LINN, BYRNE & CATO, for appellant.

W. S. LAIDLEY, for appellee.

MILLER, PRESIDENT:

The plaintiff on June 20, 1905, in Webster county, where he
resided, made, and delivered to defendant, residing at Charleston,
in Kanawha County, a deed of general warranty for Lot 15, in
Block K, and Lots 13, 16, 17, 18 and 19 in Block L of the Ruff-
ner Addition to said city, the consideration being twenty-two
hundred dollars, one thousand dollars in cash and the balance
in two equal annual payments, represented by notes, of six hun-
dred dollars each.   At the time he received the deed defendant
gave plaintiff his check for one thousand dollars on a Charleston
bank, for the cash payment, and executed and delivered to him
also his two notes for the deferred payments, for which a vendor's

lien was reserved in the deed. At the same time, at the request of defendant, plaintiff gave him two separate memorandums in writing, as follows: The first: "Webster Springs, W. Va., June 20, 1905. I have this day sold to A. Midelburg certain lots in the town of Ruffner, Kanawha county, W. Va., and executed to him a deed for same. Now, I agree to execute any further deed or deeds that he may wish for said six lots in Ruffner Addition, Charleston, W. Va. C. P. Dorr." The second: "There is no mortgage or deed of trust given by me or Duffy on any of these lots. I hold all the judgments against P. F. Duffy, the former owner of the 6 lots. I refer to the deed made to A. Midelburg, June 20th, 1905. C. P. Dorr." Plaintiff says he placed the check in bank, directing the cashier not to send it forward for collection for a week or so; but it was in fact forwarded for collection and was paid by the Charleston bank June 26th, after defendant had reached his home in Charleston, June 23, 1905. The following day, June 24th, defendant after consulting his attorney, and, as he claims had had him examine the title for liens only, had him also prepare a new deed for the lots, antedating it to correspond with the date of the original deed, with more accurate description of the lots, and containing also in addition to the covenants of general warranty, covenants against "all incumbrances." This deed defendant forwarded to plaintiff by mail at Webster Springs, with a letter saying: "Enclosed please find another deed for six lots you sold me, kindly sign yourself and wife, and have acknowledged and return by registered letter to Charleston. By so doing you will oblige, yours truly, A. Midelburg." Plaintiff being absent from home did not receive this letter, and the deed enclosed, until July 10, 1905, when he and his wife signed, acknowledged and returned it to defendant, who received it on July 12, 1905, and notwithstanding he had learned between the date of forwarding the new deed to plaintiff and the date of its return to him, if not before, that Dorr had more than a year before conveyed said Lot No. 13 to Mrs. Petty, who had built a house upon it and was occupying the same as a residence, he at once, without notice to Dorr, placed the deed on record, and then notified Dorr and demanded of him re-payment of one sixth of the purchase money, which plaintiff refused,

but offered to return to defendant his money and notes on a reconveyance of the lots. Defendant declining this proposition brought suit against Dorr to recover the value of lot No. 13. Whereupon plaintiff filed his bill in the circuit court against defendant to enjoin the prosecution of said action at law, and seeking in the alternative, either to have his deed set aside and annulled so far as it relates to said lot No. 13, or if the defendant should prefer that it be wholly set aside, and for general relief.

The grounds for the relief alleged are substantially these: That before and at the time of making the original deed, he met defendant at Webster Springs, who inquired if he did not own some lots in Charleston, and he answering that he did, defendant inquired how many, and that he answered that he did not remember, that he had sold one lot to the City of Charleston, and another to O. A. Petty; that he did not know the location of the lots except in a general way; that he finally found his tax receipts for taxes paid upon the lots owned by him for the year 1904, which covered said lot No. 13, but that he explained to the defendant that he did not know whether or not he owned all the lots covered by the tax receipts, but that defendant appeared to be well acquainted with the property and knew what lots plaintiff owned, and proposed to pay him a price which he declined, but finally agreed to sell defendant all the lots he owned at the price agreed, $2,200.00; that he executed and delivered the deed to defendant for the lots which he supposed he owned, with the understanding and agreement that defendant should upon his return to Charleston, see W. E. R. Byrne, plaintiff's attorney and agent, examine the records and ascertain just what lots plaintiff did own, and if the deed executed was correct and included only the lots which plaintiff owned, and was otherwise satisfactory, the same should be considered as delivered, and might be put to record; but if such investigation should show that the deed included more or less property than plaintiff owned, or was otherwise unsatisfactory, defendant should have a new deed prepared according to the facts found to exist conveying just what property plaintiff did own and sent to plaintiff to be executed; that it was further agreed that if upon such investigation it should be found that plaintiff did not own as many lots as was supposed, or if what he did own were not desirably located, on being so ad-

vised by defendant, plaintiff should refund to defendant the money paid and surrender to him his notes, and that the deed or contract should be declared at an end; that on receiving from defendant the deed prepared by his attorneys in lieu of the original deed, and believing that the same had been prepared in accordance with said contract, and after consulting with said Byrne, so as to convey all the lots owned by plaintiff and no more, he executed, acknowledged and returned it to defendant. It is furthermore charged in the bill that without consulting said Byrne and after having ascertained from the record that plaintiff had previously conveyed and did not then own said lot No. 13, and with intent to wrong, cheat and defraud him defendant caused said deed to be prepared, forwarded and executed by plaintiff and returned to him for recordation, and that plaintiff was thereby induced by mistake on his part and fraud on the part of defendant to execute and deliver said deed including said lot No. 13; that immediately on learning of the mistake on his part and fraud of defendant plaintiff offered to refund defendant his money and return to him his notes and requested a re-conveyance of said lots.

The defendant demurred to plaintiff's bill which was overruled and also answered, putting in issue all the material allegations of the bill, and upon final hearing, October 12, 1907, upon bill, answer and depositions taken, the court below pronounced the decree appealed from, dissolving the injunction and dismissing the bill.

Briefly the grounds for relief relied on by plaintiff are:    First, that the delivery of his original deed to defendant was conditional, and as an escrow, not to be effective unless upon consulting with Byrne and the examination of the title, everything should be found satisfactory.    Second, that by failing to comply with the condition on which said deed was delivered, and by promising plaintiff to prepare the second deed as alleged, defendant had perpetrated a fraud on him entitling him to the relief prayed for.

On the first proposition plaintiff and defendant, the only witnesses to the transaction, in their evidence, are in direct conflict, defendant swearing positively that the only contract or memorandum had with plaintiff, outside of the deed itself, is

contained in said two memorandums. But what could it avail plaintiff if we should assume the fact to be as alleged and proven by him? He admits that he actually made and delivered the deed to defendant, though upon condition, and not to become effective until conditions fulfilled. The question is thus presented: Can a deed for land absolute on its face be delivered by grantor to grantee as an escrow or upon a parol condition? The general rule founded on the ancient common law definition of an escrow, is that it can. not be so delivered, that such a condition is void and that the title passes absolutely to the grantee. 16 Cyc. 571; *Miller* v. *Fletcher*, 27 Grat. 403, 405; *Hicks* v. *Goode*, 12 Leigh 479, 490; *Lyttle* v. *Cozad*, 21 W. Va. 183, 200-1; *Whitney* v. *Dewey*, (Ida.) 69 L. R. A. 572, 581; 16 Am. Dig. (Cent. Ed.) 3124, c. c. 153-155, and many cases there cited; 1 Devlin on Deeds 3314. In 16 Am. Dig., *supra,* our own case of *Newlin* v. *Beard*, 6 W. Va. 110, is cited for the contrary doctrine; and in *Lyttle* v. *Cozad, supra,* Judge GREEN at page 201, referring to the views of Judge Staples as expressed in *Miller v. Fletcher, supra,* says: "But nevertheless, these views cannot perhaps be easily reconciled, if at all, with the decisions in *Stuart* v. *Livesay,* 4 W. Va. 45, and *Newlin* v. *Beard,* 6 W. Va. 110." The cases cited, and indeed all the cases in which the question is presented, draw the distinction more or less clearly, between a delivery in escrow or a conditional delivery to the grantee, and cases where the grantee has in some way obtained manual possession of the deed, but there has been no intentional delivery of the deed for any purpose, for, as some of our cases hold, delivery is always a question of intention of the parties, and if there has been no intention to deliver, if the minds of the parties have never met on the subject of delivery, there is no delivery, no intention to pass the title on any terms or conditions, hence no contract, no deed. *Adams* v. *Baker*, 50 W. Va. 249, citing *Delaplain* v. *Grubb*, 44 W. Va. 612; *Glade Coal Mining Co.* v. *Harris,* 65 W. Va. 152 (63 S. E. 873.) "But where it is the intention of the parties for the title to pass upon any contingency or on any event from the grantor to the grantee, and the deed is delivered to the grantee, absolute on its face, then the vesting of title becomes a question of law, and must date from the delivery, and, since the grantee cannot act as the agent of both himself

and the grantor for the purpose of a second delivery, title must necessarily have passed upon the original delivery." *Whitney* v. *Dewey, supra,* 581. The Idaho court says in the same connection: "This rule is very clearly stated by the New York court in *Braman* v. *Bingham,* 26 N. Y. 492, where it was said: 'The reason given for the rule excluding parol evidence of a conditional delivery to the grantee applies to all cases where the delivery is designed to give effect to the deed, in any event, without the further act of the grantor.' " We do not regard *Stuart* v. *Livesay* and *Newlin* v. *Beard, supra,* as opposed to the general rule laid down in these authorities, any more than *Miller* v. *Fletcher* and other Virginia cases cited therein may be regarded in conflict therewith, for in neither of these cases was a deed for land delivered to a grantee in any way involved. In the first two cases the actions were upon bonds conditioned for the payment of money, and pleas by defendants of *non est factum.* This was also the character of the action in *Miller* v. *Fletcher.* In the latter case, however, Judge Staples, in the syllabus does state the rule broadly, as follows: "A deed, perfect on its face cannot be delivered as an escrow to the grantee or obligee, upon a condition upon which it is to be a valid deed. In all such cases the condition is void, and the deed is at once operative;" and, "Parol evidence is inadmissable to prove that a deed, perfect on its face, was delivered to the grantee on a condition." In *Nash* v. *Fugate,* 32 Grat. 595, 605, twice before the Virginia court of appeals, and reported the first time in 24 Grat. 202, the doctrine of *Miller* v. *Fletcher* was relied on, but Judge Staples, who also wrote the opinion in the latter case, says: "Counsel insists that there is no substantial distinction between delivery directly to the obligee by all parties signing the paper and a delivery by part of them to the principal obligor and by the latter to the obligee. In either case the delivery is absolute and the condition void. A moment's reflection will, however, show there is a wide distinction between the two cases. A deed cannot be delivered as an escrow to the party on whose behalf it is made; no matter what may be the form of the words used the delivery is absolute, and the deed takes effect immediately. In escrow, on the other hand, *ex vi termini,* is a deed delivered to some third person, a stranger, to be by him delivered to the grantee, upon the perform-

ance of some condition.   When the books speak of the delivery
to a stranger as an essential to an escrow, it is in contra-distinc-
tion to a delivery to the party in whose behalf the deed is made."
As in *Miller* v. *Fletcher,* the instrument involved in *Nash* v. *Fu-
gate* was a bond for the payment of money, not a deed for land.
The precise points presented by two pleas and instructions to
the jury based thereon, and decided were: first, that a bond con-
taining a number of scrolls for signing below the names of sure-
ties who signed it, but in other respects complete and perfect on
its face, and signed and delivered by the sureties to the principal
obligor on condition that he sould obtain additional sureties to
execute it before delivery to the obligee, but delivered by him
without having complied with the condition, was binding on the
sureties, unless the obligee had notice of the unfulfilled condition,
the additional scrolls not being sufficient to put him on inquiry
as to the authority to deliver the bond; and, second that a bond
so signed by principal and sureties may be avoided by parole
proof, clear and satisfactory, that the obligee had notice at the
time he received the bond from the principal of the condition on
which the bond had been delivered to the principal.   The distinc-
tion here sought to be maintained is the distinction between a
deed delivered as an escrow to a party to the deed, and one that is
delivered to a stranger. As observed by Judge Staples in *Miller* v.
*Fletcher,* Judge Cabell in *Hicks* v. *Goode, supra,* at page 490,
says:   "I am not disposed to controvert the distinction between
a deed delivered as an escrow to the party to the deed, and one
that is delivered to a stranger.   While it is universally conceded,
that where a deed is sealed and delivered to a stranger, as an es-
crow, until certain conditions are performed, and then to be de-
livered to him to whom the deed is made, to take effect as the
deed of him who sealed it, such deed, even although the other
party get it into his possession, is as inoperative, until the con-
ditions are performed, as if it had never been delivered at all;
yet it seems to be settled also, that if a deed be sealed and deliv-
ered to the party himself to whom it is made, as an escrow, but
to become the deed of him who sealed it on certain conditions, in
such case, let the form of the words be what it may, the delivery
is absolute, and the deed shall take effect presently as his deed,
and the party is not bound to perform the conditions."   And

after referring to the authorities and the reasons given by them for this doctrine, Judge Cabell further says: "As already observed I shall not controvert the propriety of this distinction. But I must say that the reasoning on which it is founded, is not only very technical, but it is unsatisfactory to my mind; for it is not every tradition, or passing of a deed from the hands of one to the hands of another, that will constitute a legal delivery of it as a deed. Something at least is due to the intention with which the tradition is made, and such intention, on such an occasion, is generally gathered from our words rather than our actions. Therefore, I am not disposed to carry the doctrine further than it has already been carried by adjudged cases." In *Humphreys* v. *Richmond & M. R. Co.* (Va.), 13 S. E., 985, 992-3, the instrument involved was a contract for a right of way made, executed and delivered to the president of the railroad company, on condition that it should not be used unless the withholding of it would defeat the building of the road, or the board of directors of the road should make compensation for the right of way. But in disregard of the condition of delivery, after the road was completed, though there had been no necessity for using the contract, and although no compensation had been made by the directors, the president turned the contract over to the right of way agent of the road who had knowledge of the conditions on which it was delivered to the president, and it was held, "that the contract was void and that the owner might recover the damages for his land." In this case it is to be observed that the delivery of the deed was not directly to the company, but to the president, in escrow, and the agent of both parties. The Virginia court in this case, among other cases, cites our case of *Newlin* v. *Beard, supra,* for the proposition that the knowledge of the right of way agent must be attributed to the company of which he was agent. After carefully considering all these authorities, I confess that I am left in some confusion as to which is the true doctrine on the subject; but I think it may safely be deduced from them, that in the case of a deed for land, absolute and complete on its face, if it be made, executed and delivered by the grantor to the grantee, to take effect upon any condition, the condition is void and the deed becomes absolute, and the title passes immediately on the delivery thereof, and the condition cannot be shown by pa-

role evidence so as to defeat the deed. It may be well to observe also that the theory on which parole evidence is often admitted to defeat a deed or bond delivered as an escrow, or on condition, is not that it is competent thereby to vary or contradict the terms of a valid instrument, but to show that in fact there has been no delivery, that the minds of the parties have never met on the fact of delivery so as to create a valid and binding contract. *Nash* v. *Fugate, supra,* 608; *Ware* v. *Allen,* 128 U. S. 597. We have extended the consideration of this subject further, perhaps, than has been necessary or profitable, in view of the real question involved, and we will pursue it no further.

The second and only other question calling for decision is, did defendant fraudulently obtain execution of either of said deeds as alleged, or was there such mistake in the property intended to be conveyed, as to render the deeds void in whole or in part at the election of the grantor? So far as the question of the conditional delivery of the deeds, or either of them, is concerned, affirmed by plaintiff and denied by defendant, may be regarded as an element entering into this question, the decree of the court below must be regarded as a finding, on conflicting evidence, in favor of defendant, which on well recognized rules of practice we can not disturb. The same thing is true as to the question of fraud raised by the pleadings and proofs. This question of fraud as presented is one of fact and not of law, which the decree appealed from has settled in favor of defendant on conflicting evidence, and we can not disturb this finding.

But may the plaintiff rescind because of his mistake in attempting to convey lot No. 13, previously granted, and to which he had at the time no title? There can be no doubt but that plaintiff intended to sell and defendant intended to buy this lot along with the other lots conveyed. No question of identity of the subject matter of the contract, therefore, is involved. We have cases holding that where there has been a mutual mistake as to the subject matter of the contract, and the deed does not convey the property which the seller intended to sell and pointed out to the buyer, and which the buyer intended to buy, a court of equity, at the suit of either party, may rescind the contract. *Baxter* v. *Tanner,* 35 W. Va. 60; *Pratt* v. *Bowman,* 37 W. Va. 715; *Sillman* v. *Gillespie,* 48 W. Va. 374, and *Lumber & Veneer*

*Company* v. *Wilson,* 51 W. Va. 30.   See also *Thompson* v. *Jackson,* 3 Rand. 504; *Leas* v. *Eidson,* 9 Grat. 278; *Glassel* v. *Thomas,* 3 Leigh 128; 1 Sugden on Vendors, 378, and cases cited in note (f).   But the exact question we have for decision here is, will a court of equity, at the suit of the vendor, set aside or rescind in its entirety an executed contract of sale of lots simply because it turns out that he had not title to one of the lots sold and purchased, no question of identity of the subject matter of the contract being involved?   The authorities we think clearly hold that where the subject matter of the contract and the consideration are single, the vendee may rescind the contract, for partial rescission of an entire contract cannot be had. 1 Page on Cont., § 138; *Hearne* v. *Ins. Co.,* 20 Wall. 491; *Dunsmore* v. *Lyle,* 87 Va. 573 (12 S. E. 610)   And the decisions seem equally clear that where there has been a sale of several parcels of land and the vendor has title to only a part the vendee is entitled to have a conveyance of that part if he will pay the price therefor and accept it in full satisfaction of that part.   *White* v. *Dobson,* 17 Grat. 262; *Dunsmore* v. *Lyle*, *supra; Van Eps.* v. *Schenectady* (N. Y.) 7 Amer. Dec. 332.   In the last case, where several lots were sold and purchased for separate considerations it was held that failure of title to one of the lots constituted no defence to a suit for the purchase money due for the lots to which the vendee got good title. And 29 Am. and Eng. Ency. L. 669 says: "On the sale of separate lots, however, the failure of title to some of the lots is no ground for rescinding the sale of the others." Citing *Van Eps* v. *Schenectady,* 12 Johns, N. Y. 436 (7 Am Dec. 330) ; *Stoddard* v. *Smith,* 5 Binn. (Pa.) 355.   The general rule is that "When the contract is entire it will not be rescinded in part and affirmed as to the rest, but it must be rescinded *in toto.* But where it is severable one part alone may be rescinded and the other affirmed. 29 Amer. and Eng. Ency. L. 675, and notes 8 and 9, and cases cited, including our case of *Worthington* v. *Collins.* 39 W. Va. 406. *Hearne* v. *Insurance Co.,* 20 Wall. 488, 491. We have here then a simple case of failure of title to one of the lots conveyed, and where the vendee has elected to take those to which the vendor had good title, and is suing to recover back the money paid, or an equitable proportion thereof to cover the value of the lot to which plaintiff had no title.   This we think he has the

right to do.  *Bulcher* v. *Peterson,* 26 W. Va. 452.   We therefore affirm the decree below.

*Affirmed.*