### Richmond

## WOODY G. MARKS AND PHYLLIS H. MARKS

### v.

## CLARENCE WILLIAMS

June 12, 1981.

Record No. 791087.

Present: Harrison, Poff, Thompson, JJ., and Harman, S.J.

*James E. Rainey (J. Edward Moyler, Jr.; Moyler, Moyler, Rainey & Cobb,* on brief), for appellants.

*Francis E. Clark (Parker, Clark & Parker,* on brief), for appellee.

PER CURIAM.

Woody G. Marks and Phyllis H. Marks sought specific performance by Clarence Williams of a real estate agreement entered into by the three parties. Williams demurred, contending that neither the Marks nor he intended the agreement to bind either party unless Williams *and his wife* executed the deed which was submitted by the Marks. The lower court sustained the demurrer,[1] and the Marks appealed.

The Marks attached a copy of the agreement to their bill of complaint as an exhibit. This agreement[2] provided that, in accordance with an earlier agreement, the Marks agreed to purchase for $56,000.00 Williams' one-fourth interest in the Mary Etta Williams real estate in Southampton County and "have had prepared the attached deed for execution by you and your wife and delivery to us." The agreement then specified in detail the terms of sale, including provisions for financing the purchase and for setting aside a portion of the land for Williams' use. The Marks agreed to pay Williams $15,000 "[u]pon the delivery of the attached deed properly executed" and agreed to deliver a promissory note for the remainder of the purchase price "[c]oncurrently

---

[1] The trial court also sustained Williams' supplemental demurrer that the bill of complaint sought inconsistent remedies. The Marks acknowledge that the supplemental demurrer was properly sustained but contend that the trial court should have granted them leave to amend their pleadings. We agree.

[2] The most pertinent portions of the agreement are set forth below:

In accordance with our September 11, 1977 agreement as heretofore amended from time to time for the purchase by us of your one-fourth (¼) undivided interest in and to the Mary Etta Williams real estate . . . we have had prepared the attached deed for execution by you and your wife and delivery to us.

As consideration for conveyance of said real estate to us, we have agreed and hereby agree to pay you the sum of $56,000.00 in accordance with the terms set out below; and we have agreed and hereby agree to convey to you a two acre lot in fee simple suitable for the construction of a residence, and six and one-half acres for and during your natural life in accordance with the terms and conditions set out below.

Upon the delivery of the attached deed properly executed, we will give you $15,000.00 less the amount necessary to pay off in full George Thomas Drake [and have deeds of trust released]. Concurrently with said delivery of said deed, we will give you a note in the principal amount of $41,000.00 for the balance of the agreed $56,000.00. . . .

with said delivery of said deed." The agreement was signed by both Woody G. Marks and Phyllis H. Marks. Clarence Williams signed his name above a line under which his name had been typed. This space was directly under a typewritten clause indicating that the agreement had been "[s]een, approved and agreed to, and accepted." No similar space was provided for the signature of Williams' wife. The Marks alleged that in consideration for Williams' agreement to sell the land, they gave him $100.00 at the time the agreement was executed.

The deed submitted to Williams was not delivered, and the Marks brought this action seeking specific performance of the agreement. Appellants concede that *God v. Hurt,* 218 Va. 909, 241 S.E.2d 800, *modified on rehearing,* 219 Va. 160, 247 S.E.2d 351 (1978), precludes an award of specific performance with an abatement in purchase price.

Williams, without addressing our holding in *God,* contends that the agreement clearly reveals neither party was to be bound by it unless he and his wife executed and returned the deed. In essence, Williams' position is that the written document constituted an offer which, by its own terms, could be accepted only by the execution and delivery of the attached deed. Thus, Williams asserts, the parties did not contemplate a sale in which the realty was subject to the wife's dower interest, and an equity court should not enforce such a sale. In support of his contentions, Williams relies primarily upon *Dunsmore v. Lyle,* 87 Va. 391, 12 S.E. 610 (1891), and *Graybill et als. v. Brugh,* 89 Va. 895, 17 S.E. 558 (1893), which he claims are analogous to this case. His reliance, however, is misplaced.

In *Graybill,* we held that an option contract executed by the husband, and not supported by consideration, could not serve as the foundation for a suit for specific performance because there was a lack of mutuality of obligation. The precedential value of *Graybill* has been significantly eroded by subsequent decisions which "practically overruled" it. *Watkins v. Robertson,* 105 Va. 269, 282, 54 S.E. 33, 37 (1906). As Williams points out, we did comment in *Graybill* that specific performance was improper because neither party contemplated a sale subject to the wife's dower interest. *Graybill,* 89 Va. at 898, 17 S.E. at 559. However, two important facts render this statement of little value to Williams. First, in *Graybill,* the wife alone, not the husband, had legal title to the land optioned by the husband. *Id.* at 897 and 899,

17 S.E. at 559 and 560. The necessity of her joining in the conveyance must have been readily apparent to the parties. Second, the person to whom the option was given had sought to have the agreement enforced free of the dower interest. *Id.* at 898-99, 17 S.E. at 559. In response, we noted the general rule that specific performance would not be proper "unless the purchaser is willing to pay the full purchase-money and accept the deed without [the spouse] joining." *Id.* at 899, 17 S.E. at 560, quoting 2 Warvell on Vendors 769.

*Dunsmore* v. *Lyle,* 87 Va. 391, 12 S.E. 610 (1891), likewise does not support Williams' contentions. *Dunsmore* did hold, as Williams notes, that specific performance was improper when the evidence failed to establish that the parties had intended an agreement subject to a wife's contingent dower interest. The facts in *Dunsmore,* however, are quite different from those presented in this appeal. In *Dunsmore,* the evidence indicated that Dunsmore, the purchaser, "availed himself of such casual opportunity of inspection as presented itself, until the seller [Lyle] was brought, while walking in the street, to a proposal, which was accepted by the words, 'I will take it.' " *Id.* at 394, 12 S.E. at 611. No written agreement was entered into. *Id.* Dunsmore paid Lyle no money at the time of their street conversation. Lyle represented that "all their negotiations were subject to the question of his wife's consent." *Id.* at 395, 12 S.E. at 612. The evidence further revealed that Dunsmore, after learning of the objections of Lyle's wife, did not propose to accept the deed subject to her dower interest. *Id.* at 394-95, 12 S.E. at 611. After hearing the evidence, the trial court ruled that Dunsmore had not established a binding contract between the parties. Noting that specific performance is improper if it is doubtful whether a contract was concluded, *id.* at 393-94, 12 S.E. at 611, we determined that the evidence supported the trial court's conclusion.

In this case, unlike *Dunsmore,* the agreement entered into by the parties was evidenced by a writing signed on the same day by the Marks and Williams. "[W]hen the contract is embodied in a formal document, simultaneously entered into by both parties, little difficulty can occur as to whether the contract was concluded." *Dunsmore,* 87 Va. at 393, 12 S.E. at 611. The agreement specified the terms of the sale and provided a space for Williams' signature under a clause indicating the agreement had been "[s]een, approved and agreed to, and accepted." The insertion of such a

space indicates the Marks were bargaining for Williams' written acceptance, not extending a unilateral offer which could be accepted only by the execution and delivery of the deed attached to the agreement. This conclusion is buttressed by the giving of $100.00 to Williams in exchange for his written agreement to the document's terms. The agreement, moreover, contained no space set aside for Williams' wife's signature. The absence of such a space indicates that the wife's agreement was not a precondition of the contract, although the Marks may have hoped, and even expected, that Mrs. Williams would execute the deed.

The bill of complaint and the written agreement fully support the conclusion that the parties intended to enter into a contract for the sale of Williams' interest in the land in question and that Williams' signature on the agreement was the mode by which the Marks' offer was to be accepted. Thus, the trial court erred in sustaining Williams' demurrer.

The judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*