COYLE *v.* B. & O. R. R. Co.

(Absent, GREEN, PRESIDENT.)

Decided September 10, 1877.

*1877.
August Term.*

1. A general demurrer is a plea, and may be filed within the same time that any other plea may be received, where no other plea has been entered.

2. An error not to the prejudice of the party, against whom it is committed, will not in the appellate court be held sufficient to reverse a judgment of an inferior court.

3. If the court below declines to entertain a demurrer, and the declaration is good, the defendant is not prejudiced thereby.

4. Duplicity in a count in a declaration at common law, could only be taken advantage of on special demurrer.

5. Special demurrers are abolished by section 29 of chapter 125, of the Code; consequently mere duplicity in a count in a declaration does not vitiate it.

6. Where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject matter will bind the principal, where made at the same time and constituting a part of the *res gestæ.*

7. There is evidence tending to prove that a colt is killed by an engine on a railroad, and to prove that the servant of the railroad company carelessly and negligently put down the fence, through which the colt escaped from the field on to the railroad track, evidence is offered to show, that a cherry tree was cut at the place where the colt went through the fence, and that it could not have been cut without laying down the fence ; and to prove that the agent of the railroad the company cut the tree, and necessarily put down the fence, following declaration of the agent of the railroad company, made at another time and at a different place, and on the farm of

another, to-wit: "The section 'boss' told him, (the witness), that he had been ordered by the railroad company to cut all the trees along the line, and that they had cut all the trees from Summit Point down." HELD.

That the evidence was inadmissible.

8. The employes of a railroad company are bound to use ordinary care and diligence, so as not unnecessarily to injure the property of others on the track.

*Supersedeas* awarded upon the petition of the defendant below to a judgment of the circuit court of the county of Jefferson, rendered on the 18th day of November, 1874, in a suit at law then pending in said court, wherein Mattie E. Coyle, was plaintiff, and the Baltimore and Ohio Railroad Company, was defendant.

Hon. John Blair Hoge, Judge of the third judicial circuit, presided at the trial below.

The record does not disclose what Judge presided at the former terms of the court below.

JOHNSON, JUDGE, who delivered the opinion of the Court, prepared the following statement of the case:

This is a writ of error to a judgment of the circuit court of Jefferson county, rendered in this case. At rules held in the clerk's office of the circuit court of Jefferson county, on the first Monday in October, 1870, Mattie E. Coyle filed her declaration in this case against the defendant for killing a colt, and laid her damages at $500.00. At the November rules of the same year the common order taken on said declaration was confirmed. At the succeeding term of the circuit court of said county, on the 21st of November, 1870, the defendant appeared and demurred to the declaration, and each count thereof, in which demurrer the plaintiff joined. There were three counts in the declaration; the record does not disclose whether the demurrer was or was not sustained; but from the next order entered at rules in February, 1871, it is presumed it was, as on that day,

1877
August Term.

Coyle
v.
B. & O. R. R. Co.
on motion of the defendant's attorney, the suit was dismissed for the want of an amended declaration. At the October rules, 1871 the plaintiff filed an amended declaration also containing three counts. At the succeeding term, on the 23d day of November, 1871, the defendant by its attorney, moved the court to strike out the amended declaration, because it was the original declaration amended by interlineation and re-filed; which motion the court overruled, but ordered the plaintiff to file among the papers of the case, a copy of the original declaration which was done, and so endorsed by the clerk; to which ruling of the court the defendant excepted, and then demurred to the amended declaration and each count thereof, in which demurrer the plaintiff joined. On the 5th day of December, 1871, the court overruled the demurrer as to the first and second counts of the declaration, and sustained the demurrer as to the third count, and on motion of the plaintiff, leave was given him to file an amended declaration within thirty days, whether in court or at rules, the record does not disclose. At February rules, 1872, the plaintiff filed an amended declaration containing a single count. At the next term of the said court, on the 28th day of April, 1872, upon the calling of the case for trial the defendant announced its readiness for trial; but the plaintiff by her attorney; asked leave of the court to file an amended declaration, and on her motion the cause was remanded to rules, with leave to file an amended declaration, but at her costs; to which the defendant excepted. Nothing more was done in the case until the 31st day of March, 1873, when the plaintiff at rules filed an amended declaration containing three counts. At rules, a rule was given against the defendant to plead; and at May rules a judgment, *nil dicit*, was had, and a writ of inquiry awarded. Nothing further was done in the case until the 4th day of November, 1874; in court the parties came by their attorneys, and the defendant demurred to the last amended declaration and to each count thereof, which demurrer

the court refused to entertain, under the rules of the court; to which refusal the defendant excepted, and thereupon pleaded not guilty and issue was then joined, and the same was submitted to a jury, which found a verdict for the plaintiff, and fixed the damages at $150.00. Thereupon the counsel for the defendant moved the court to set aside the verdict and grant a new trial in the case, which motion the court overruled, and on the 18th of November, 1874, entered judgment on the verdict.

Six several bills of exceptions were taken by the defendant at the trial.

The first, to the ruling of the court in declining to entertain defendant's demurrer to the declaration.

The second bill sets out all the evidence in the case. All that is material to be considered in this case, which omits the defendant's testimony, is as follows:

"The plaintiff, to mantain the issues on her part, introduced Robert W. Baylor a witness in her behalf, who testified that before daylight, on the morning of the 17th day of October, 1869, he heard an engine passing down on the Winchester and Potomac railroad, which was then being run by the Baltimore and Ohio Railroad Company; that the engine was making considerable noise—heard its alarm whistle blow long and loud, and thought it was on his land, which adjoins the land of Joseph O. Coyle, where the plaintiff's colt was grazed; that from the sound he took it to be an engine and tender; that during the forenoon of that day, in consequence of information he had received, he went to that portion of the track of said railroad which adjoined the land of said Coyle, and there he saw a two year old colt dead with one of its legs broken and nearly off, only hanging by a small piece of skin, and otherwise bruised, and that there were evidences of the colt having been dragged; in going along the track of the road he saw, some fifty yards from where the colt was lying, tracks of two colts or unshodden horses, which tracks came down the bank

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.

where the cut for the railroad had been made, and the tracks of one of them returning ; that one colt was then in the field of Mr. Coyle; that where the tracks came down the bank the fence was down and had the appearance of having been let down; that a cherry tree had stood against the fence dividing the railroad from the field, and outside of the field, between it and the railroad track; that the fence was a common worm rail fence ; that the tree stood close to the lock of the pannels ; had the appearance of being recently cut down ; and that the tree could not have been cut down without letting down the fence; that the track of the railroad ran between the lands of said Coyle and the lands of W. A. Showalter ; that sometime before this, in August or September preceding the injury to the colt, he saw several of the track hands and employes of the Baltimore and Ohio railroad come from Coyle's and Showalter's lands and go *on to* the land of witness.

"The plaintiff then offered to prove by this witness that said employes commenced cutting trees on the land of witness, to the introduction of which evidence the defendant by its attorney objected ; but the plaintiff's counsel claiming that the plaintiff would connect the said cutting with the wrongs alleged in her declaration, the court allowed the same to go to the jury, reserving the right to the defendant to move to exclude the same after all the evidence in the case should be produced.

"The plaintiff then offered to prove by this witness that after he saw them commence cutting trees on his land, he went down where they were and asked them what they were doing, and what authority they had for cutting the timber, and the section "boss," who had charge of the hands, told him that he had been ordered by the railroad to cut all the trees along the line, and that they had cut all the trees from Summit Point, which was beyond Coyle's land, down; that he ordered them to quit, and they did so and left his land ; to the introduction of which evidence the defendant objected,

but the plaintiff offering to connect said evidence with the wrongs alleged in her declaration, the court, without deciding the question, permitted said evidence to go to the jury, reserving the right to the defendant to move to exclude the same after all the evidence in the case had been heard.

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.

"The said witness then further testified that when said employes had left his land, he at once hitched his horse and walked up the track of the railroad as far as the same ran between the lands of Showalter and Coyle, to see whether the section "boss" had told the truth about the cutting of the timber, and he found that all the trees as far as he went, including those on Coyle's land, had been cut, and they were then lying on the ground ; that the leaves were still green on the same; that a short time before the accident to the said colt, witness had been by where the cherry tree had been cut, and noticed for the first time that the fence was partly down ; that he measured the distance from the stump of the cherry tree to the centre of the railroad track, and the distance was seventeen feet; that the said Joseph O. Coyle was the father of the plaintiff, and had been keeping said colt, and that said colt was worth $150.00.

"The plaintiff also introduced James W. Coyle, another witness in her behalf, who testified that the colt that was injured was the property of the plaintiff; that he thought so because he knew that the mother of the colt was a mare which had been given to the plaintiff before the colt was born, by plaintiff's uncle, John M. Coyle.

"The plaintiff then introduced W. A. Showalter, another witness for the plaintiff, who testified that on the 17th day of October, 1869, in consequence of information received from Mr. Joseph Coyle, the father of the plaintiff, and who at that time lived on the place belonging to his brother, John M. Coyle, and which place adjoined the place belonging to witness, witness went down to the railroad track and saw the colt; that he met Col. Baylor, and they examined the colt and the ground; that the colt

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.
was dead; had one leg broken off, and was mangled some; didn't take very particular notice; that witness and said Baylor went up the track to ascertain how the colt was killed; went about ninety yards from where the colt lay, and saw tracks of two colts coming down the bank opposite to and near where the fence was let down and a cherry tree cut, and only one going back; the stump of the tree looked like it hadn't been long cut; that there was the track of one colt going back up the bank towards where the fence was let down, and one colt unharmed was inside of Coyle's field; that they saw no colt tracks at the fence where it was let down; that the ground there was hard sod; that the fence was against the tree; that the tree was between the railroad track and the fence; that the fence, when put up, was higher than the stump, and that the cherry tree could not be cut without letting the fence down; that the tree where colt was killed had the appearance of having been fresh cut down, and the gap looked as if it had been carefully laid down to cut the tree; that Coyle's land was on one side of the railroad and the land of witness was on the opposite side; that the fence was between Coyle and the railroad, and also between Coyle and witness; that witness had no fence on his side of the railroad, and this fence was the only means of keeping their stock apart; that Coyle's fence was a tolerably good fence; that they both kept it up, and that witness repaired it when he found it out of repair; no stock had trespassed on me before the trees were cut; that witness had never observed the fence down at this place before; that all the trees along the railroad on his side had been cut, and all or nearly all on Mr. Coyle's side; that he did not see them cut; that he moved on his place in August, 1869, and the trees on his place were cut before he moved there; that the cherry tree had not been taken away when the colt was killed; that it was about one foot through, and lay between the fence and the railroad; that it appeared to have been recently cut down when colt was killed; that witness had claims

against the defendant for damage done to property, and intended to bring suit on them if the plaintiff got a judgment in this case; that the fence at said cherry stump, when it was down, as witness and Baylor first saw it, was two or two and a half feet high.

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.

"The plaintiff, to further sustain the issues on her part, introduced and read in evidence a contract and agreement between the Winchester and Potomac railroad and the Baltimore and Ohio railroad."

Then follows the agreement between the Baltimore and Ohio Railroad Company and Winchester and Potomac Railroad Company.

After which, the testimony of the defendant appears, which is not material to the decision of the points presented in this case. The conclusion of this bill of exceptions is that, there being no further evidence in the case, the defendant, by its attorney, moved the court to exclude the following portions of the evidence of the witness, Robert W. Baylor from the consideration of the jury, to-wit: "The said employes commenced cutting trees on the land of witness; the introduction of which had been objected to when offered, which motion the court overruled, to which ruling of the court the defendant excepted, &c."

The third bill of exceptions is as follows:

"Be it remembered that on the trial of this cause, after the introduction of the testimony and the proceedings had as set forth in defendant's second bill of exceptions, which said bill is referred to as a part of this bill, and is incorporated herein, the defendant moved the court to exclude from the consideration of the jury, the following of the testimony of said witness, Baylor, to-wit: That after witness saw said employes come from John M. Coyle's land, and commence cutting trees on his land, he went down where they were and asked them what they were doing, and what authority they had for cutting the timber, and the section "boss," who had charge of the hands, told him "that he had.

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.

been ordered by the railroad to cut all the trees along the line, and that they had cut all the trees from Summit Point down ; that he ordered them to quit and they did so, and left his land." To the introduction of which evidence, the said defendant had objected when the same was tendered as aforesaid, but the court overruled said motion and permitted the said evidence to be considered by the jury, to which action of the court in overruling said motion and allowing said evidence to go to the jury for its consideration, the defendant excepts, &c."

The fourth bill of exceptions was to the refusal of the court to give the two following instructions to the jury :

" The court instructs the jury that there is no law in this state requiring the defendant to fence its railroad track, and that the defendant has the right to the exclusive and complete possession and entire control of said track, including a tract of land on each side thereof, and not less than twenty feet from the centre thereof; and that all property or persons on said track or within said limits, unless by the permission, expressed or implied, of the defendant, are trespassers thereon, and if such property so on the track is killed without gross carelessness or wantonness, the company is not liable for such loss. "

" The court instructs the jury that the defendant has the exclusive and complete possession and entire control of its track, including a tract or strip of land lying on each side thereof, and extending not less than twenty feet from the centre of said track, and that said company has the right to remove any fencing or other property placed or erected on said track or adjoining said strip of land, and that the removal of such fencing, or the throwing down thereof when erected or placed thereon by persons having no right so to do, is not negligence on the part of said company."

The fifth bill of exceptions was to the giving of the following instruction :

" The court instructs the jury that although the facts that the defendant's servant put and left down the gap

in the declaration mentioned, and that the plaintiff's colt came through this gap upon the railway must be proven by the plaintiff, yet they need not be proven by any direct evidence, but it will be sufficient for the plaintiff to prove these facts by evidence of other facts and circumstances which satisfactorily lead the jury to this conclusion."

The sixth bill of exceptions was to the judgment of the court in refusing to grant a new trial to the defendant.

*Baylor & Wilson*, for defendant below and plaintiff in error:

The court erred in refusing to allow the demurrer to the last amended declaration; for no rule of court can deprive a party of a right given by statute. The Code gives the right to a party to file a plea at any time before final judgment. Code, ch. 125, §53.

A general demurrer is a plea. 5 Rob. Prac., 183; 2 Brock., 14; 1 Rob. Prac. (old), 286; 4 H. & M., 277.

The defendant below was injured by this refusal, because the third count of this declaration, under which alone any evidence was introduced, is faulty for duplicity. Steph. Pl., 252.

It was error to admit Baylor's testimony as to statements of the "section boss," because these statements did not accompany any act of the agent or servant, which was material and relevant. 1 Green. Ev. (Redfield's ed.), §113, 114, 114a, and authorities in the notes; Story Agency, §134, 137; *Bellefontaine R. R. Co.* v. *Hunter*, 5 Amer. R., 201. But were mere recitals of past transactions. *B. & O. R. R. Co.* v. *Christie*, 5 W. Va., 325; *V. & T. R. R. Co.* v. *Sayers*, 26 Gratt., 328; *Woods* v. *Banks*, 14 N. H., 101; *Haynes* v. *Rutter*, 24 Pick., 242; Tindal, C. J., in *Garth* v. *Howard*, 21 E. C. L., 341.

*C. Boggess*, also appeared for plaintiff in error.

*Daniel B. Lucas*, for plaintiff below and defendant in error, referred to the following authorities:

1 Red. on Railways, p. 508-9-10-11-12-13, 474, 491-3, 533; Sher. & Red. on Neg., 368, 37; Red. Sup. to Law of Railways, 371-5-6-7; 7 Carr & P., 754; *Sewell* v. *B. & L. R. R. Co.*, 23 Pick., 34; 1 Green. Ev., §113; *Myles* v. *C. & L. R. R. Co.*, 15 B. Mon., 641; Story on Agency, 87, 126, 129, 135, 145, 106, 259, 26; *Sisson* v. *C. & T. R. R. Co.*, 14 Mich., 489; *Brehm* v. *G. W. R. R. Co.*, 34 Barb., 256, 275; *Hynds* v. *Hays*, 25 Ind., 32, 34; *Baring* v. *Clark*, 19 Pick., 220; 38 Ind., 116; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St., 396; Step. Pl., 424.

JOHNSON, JUDGE:

The first question to be considered is, did the court err in declining to entertain the defendant's demurrer? The reason of the court given in the bill of exceptions is "The court refused to allow said demurrer to be taken and filed by the defendant, because under the rules established by this court, the said demurrer should have been taken on Saturday, the 31st day of October, 1874, and the eleventh day of this term, or on the Saturday preceding said last mentioned day." We do not decide whether a circuit court has under the law, the right to regulate the times at which pleadings may be filed in court, as no such point fairly arises upon the record in this case, no rule of court being certified in the record. No reason appears in the record sufficient to show that the defendant had not the right to demur when it did; and it was error to refuse to allow the demurrer to be filed, provided such refusal was to the prejudice of the defendant. An error not prejudicial to the rights of the party against whom it is committed will not be held sufficient in this court to reverse the judgment of the court below. This is so well settled, that it is not deemed necessary to cite any authority to sustain it.

If the demurrer, had it been entertained by the court, should have been overruled, or in other words, if the

declaration and each count thereof is good, then no error has been committed in this respect to the prejudice of the defendant. No objection is here urged to the first two counts of the declaration, and the Court sees no objection to them, but it is insisted in the argument that the third count in the declaration is fatally defective, on the ground that it presented two distinct causes of action.

The count is as follows:

" And for this, also, that on the day and at the place last above mentioned, the said plaintiff was possessed of a certain valuable colt, which was then and there, by permission of the owner of the field, lawfully grazing in a field adjoining the railroad track of said company, into which field the servants of the defendant, by its order and direction, entered to cut a tree standing therein, and in order to cut said tree, and in the cutting thereof, the defendant, through his said servants in and about the matter employed by him, then and there carelessly, negligently, improperly and unlawfully put and left the fence down which separated said field from his said track, whereby the said colt of the plaintiff then and there came upon the said track; and the defendant was then and there possessed of a certain railway steam engine, under the care, government and direction of a certain then employe and servant of the defendant, who was then and there engineering and running said engine, and the defendant then and there, by his said servant, so carelessly, unlawfully and improperly drove, engineered and ran the said steam engine, that by and through the carelessness, negligence and improper conduct of the defendant in putting and leaving down the said fence as aforesaid, and by and through the carelessness of said defendant in running the said engine, the said engine then and there ran over, struck and killed the said last mentioned colt of the plaintiff, without any default on her part, and to her damage, $300.00. By reason of which several wrongs the plaintiff has suffered great loss and damage, to the amount of $300.00, and, therefore, she sues."

It is also insisted that one of the causes of action thus presented is too remote to sustain an action thereon.

We do not think this position well taken, for if the plaintiff had taken the precaution to put her colt in a field where it would be prevented from going into danger upon the railroad track, and the defendant let the colt out by putting the fence down and thereby the colt went upon the track and was killed, the killing would be the natural result of the carelessness of the defendant in letting the colt out of the field and upon the track of the railroad, and the plaintiff would, upon that state of facts, certainly be entitled to recover.

Is the count bad for duplicity, in setting forth two causes of action, one for killing the colt by the carelessness of the defendant in putting the fence down, and the other for killing it by negligently and carelessly running the defendant's engine on the road? At common law we think the count would have been bad, but could have been taken advantage of only on special demurrer, the objection being to the form and not to the substance. *Kennaird &c.* v. *Jones,* 9 Gratt., 189.

In *King* v. *Howard,* 1 Cush., 141, the court, by Wilde J. said, "The defendant objected to the declaration for duplicity, and this objection was overruled and we think rightly; for duplicity can be taken advantage of by special demurrer only according to a well-known rule of pleading; and now special demurrer being abolished, this objection cannot be maintained in any case."

Sec. 29 of chapter 125, of the Code of West Virginia, provides that " on a demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings whether it has heretofore been deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defence, that judgment according to law and the very right of the case cannot be given."

This language was incorporated into the Code of Virginia at the revisal of 1849, and to this part of the

1877.
August Term.
Coyle
v.
B. & O. R. R. Co.

section there is the following note, "This section is so framed as to prevent a demurrer being sustained to any pleading for such matters of form, as heretofore were required to be specially alleged as causes of demurrer, and which, if so alleged, were available; its effect is to abolish special demurrers."

The supreme court of appeals of Virginia have held this to be the effect of the said section. *Smith's adm'r* v. *Lloyd ex'or*, 16 Gratt., 313.

As the statute of *jeofails* abolished all special demurrers; mere duplicity in a declaration is now no ground of demurrer. Therefore, if the court had allowed the demurrer to have been filed, it would have been compelled to have overruled it. The count being good, the defendant has no ground of complaint, because the demurrer was not filed.

The point presented by the third bill of exceptions will next be considered. This bill, is to the ruling of the court in refusing to exclude the following portion of the testimony of Robert W. Baylor. "That after witness saw said employes (the employes of the defendant) come to John M. Coyle's land, and commenced cutting trees on his land, he went down where they were, and asked them what they were doing, and what authority they had for cutting the timber, and section " boss " who had charge of the hands told him that he had been ordered by the railroad, to cut all the trees along the line, and that they had cut all the trees from Summit Point down ; that he ordered them to quit, and they did so and left his land." This bill refers to bill of exception number two which certifies the evidence. Did the court err in refusing to exclude this testimony?

The counsel for plaintiff argues that the tendency of this testimony was to prove the *fact* that a servant of the company had cut a cherry tree near the railroad track, which testimony was subsequently connected with plaintiff's case, by proof that the cherry tree could not have been cut without letting down the fence through which the colt escaped.

The fact of cutting the tree, it is further contended, tended to establish an important link in the chain of evidence to sustain the third count in the declaration.

The general rule as to the admission of the declarations of an agent to bind the principal is well settled. Greenleaf, in his work on Evidence, vol. 1, §113, thus states it:

"Where the acts of the agent will bind the principal, there, his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time, and constituting part of the *res gestæ*."

Unless such declarations form a part of the *res gestæ*, they are inadmissable. *Sisson*. v. *Cleveland and Toledo Railroad Company*, 14 Mich., 489; *Smith's adm'r* v. *Beltz et al.*, 11 Gratt., 763; *Baltimore and Ohio Railroad Company* v. *Christie*, 5 W. Va., 325; *Thallheimer* v. *Brinckshoff*, 4 Wend., 394; *Virginia and Tennessee Railroad Company* v. *Sayler*, 26 Gratt., 350.

We have seen no case in which the declarations of the agent have been received as evidence, unless such declarations were made at the time the wrong, or act, for which the principal was responsible, was done, and was, therefore, a part of the *res gestæ*. The wrong in this case, according to the part of the third count in the declaration, to which the proof was directed, consisted of two things: first, the negligence of the defendant *in putting and leaving the fence down*, through which the colt strayed upon the railroad track; and secondly, killing the colt on the track. How could they prove the fact that the defendant, by its agent, put and left the fence down? It could have been done by putting the agent himself on the stand; or it could have been done by proving, by some one else who knew the party to be the agent of the defendant, that he was such agent, and while acting within the scope of his authority, put and left down the fence; or by some witness that he saw the man, who was the agent of the defendant, cut the cherry tree, and to enable him to do it, put down the fence, and

while in the act, the man told him he was ordered by the said railroad company to cut down the tree. But could the plaintiff prove, under that part of the count above mentioned, first, that the tree was cut down; secondly, that the tree could not have been cut without putting down the fence; thirdly, that the fence was down after the tree was cut; and to prove the *most material fact, that the defendant put down the fence,* introduce the declaration of the agent of the road while he was cutting a tree on another man's farm; " that he had been ordered by the railroad to cut all the trees along the line of the road and that they had cut them from Summit Point down." Cutting the tree was not the material fact to be proven, but *who put down the fence* was, and we cannot see how according to reason or authority, the proof of the declaration of the section " boss " on another farm and while cutting another tree at a different time, that he had been ordered by the defendant to " cut all the trees on the line of the road and that they had cut them from Summit Point down, " could form any part of the *res gestæ* in the case, and be admissable testimony.

It is argued that the declaration was a part of the *res gestæ,* because the cutting of *the trees along the line of the road,* was one continuous act of the defendant, if that be so, then why would not the same declaration of the section " boss " have been admissable in the case if made near Staunton, a hundred miles above, had the road extended that far under the control of the defendant, six months after if it had been made while the hands had been cutting a tree in pursuance of said order? Again, the issue was not who cut the tree? but who put the fence down? Had it been an action of trespass for cutting timber on the farm of Coyle, I apprehend it would not be admissible to prove the trespass on Coyle's land to give in evidence, a declaration made by a party who was the agent of the defendant while committing a trespass by cutting timber on Baylor's land, even if that declaration was "that he had been ordered by the

railroad to cut all the timber on the line of the road. We think it would be dangerous to admit such testimony and are not disposed to extend the rule as to the admission of such testimony any farther than the adjudicated cases have gone in that direction.

The point raised in the second bill of exceptions is, that the court erred in refusing to exclude the following portion of the testimony of Baylor : "The said employes commenced cutting trees on the land of witness." This language occurs in the testimony of the witness Baylor, as set out in bill of exceptions number two.  If the declaration of the section "boss" had been admissable so would the fact that the employes of the road came on the land of witness, and commenced cutting trees there, as it was but an introduction to the testimony, but as that should have been excluded, so should this, as it was wholly irrelevant.

The fourth bill of exceptions was to the refusal of the of the court to give two instructions asked by the defendant ; the first was : "The court instructs the jury, that there is no law in this state requiring the defendant to fence its railroad track, and that the defendant has the right to the exclusive and complete possession, and entire control of said track, including a tract of land on each side thereof, and not less than twenty feet from the centre thereof ; and that all property or persons on said track, or within said limits, unless by permission, express or implied, of the defendant, are trespassers thereon ; and if such property so on the track is killed, without gross carelessness or wantonness, the company is not liable."

The court properly refused this instruction, as it does not propound the law correctly.   In the case of *Baylor* v. *B. & O. R. R.*, 9 W. Va., the court held " that although a railroad company has the right to the free and uninterrupted use of its track, and the paramount duty of its employes is the protection of the train, the passengers, and the property therein,  yet, such employes are bound

1877.
August Term.

Coyle
v.
B. & O. R. R. Co.

to use ordinary care and diligence, so as not unnecessarily to injure the property of others on the track; it being the duty of the servants of the railroad company, so far as consistent with their other and paramount duties, to use ordinary care to avoid injuring cattle on their track; they are bound to adopt the ordinary precautions to discover danger, as well as avoid its consequences after it becomes known." The instruction is entirely inconsistent with the law as above stated, and would hold the railroad company to very slight or no care at all.

The second instruction presupposes that the fence through which the colt escaped, was built on the company's land. Of this there was no evidence in the case and the instruction was calculated to mislead the jury, and was irrelevant.

The fifth bill of exceptions was to the giving of the following instruction:

"The court instructs the jury that although the facts, that the defendant's servant put and left down the gap, in the declaration mentioned, and that the plaintiff's colt came through this gap, upon the railway, must be proven by the plaintiff, yet they need not be proven by any direct evidence, but it will be sufficient for the plaintiff to prove these facts, by evidence of other facts and circumstances, which satisfactorily lead the jury to this conclusion."

The instruction is vague and indefinite and calculated to mislead the jury. No facts are enumerated, and no indication is given to the jury, from what facts, or class of facts, they would be authorized to draw the conclusion that the defendant's servant put and left down the fence; and that the defendant killed the colt. The instruction must have been based upon the evidence before the jury, and, the most material evidence from which an inference could have been drawn that the defendant's servant put and left the fence down, was the portion of the evidence of Baylor, which has been considered; and having come to the conclusion that Baylor's evidence as to the declara-

tion of the defendant's servant was improperly left to the jury, the instruction was clearly wrong, and ought not to have been given.

It is unnecessary to consider the points raised in the sixth bill of exceptions, so far as it relates to the motion for a new trial, on the ground that the evidence was not sufficient to warrant the verdict. The other points in said bill raised, we have already considered.

For the foregoing reasons, the judgment of the circuit court of Jefferson county rendered, on the 18th day of November, 1874, is reversed, with costs, and this Court proceeding to render such judgment as the court below should have rendered, it is considered by the Court, that the verdict of the jury rendered in this case be set aside and a new trial awarded the defendant; the costs in the circuit court to abide the event of the suit; and this cause is remanded to the circuit court of Jefferson county, for further proceeding to be had therein according to the principles of this opinion, and further according to law.

JUDGMENT REVERSED and case remanded.