# CHARLESTON.

American Buttonhole Overseaming Sewing Machine Co. v. Burlack *et al.*

Submitted June 17, 1891.—Decided December 17, 1891.

1. Answer—Non Est Factum—Pleading—Deed.
    In an action of debt founded on a bond or other deed, the defendant may put in issue the execution of the instrument by pleading *non est factum* generally, and in the common form.

2 Answer—Non Est Factum—Pleading—Deed.

But if he wishes to separate the law from the facts, so that the court may pass upon the sufficiency of the special ground why it is not his deed, then he must allege such facts specially, concluding with an *"et sic non est factum,"* "and so is not his act," (or deed.)

3. Evidence—Fraud—Non Est Factum—Deed.

In a court of common-law fraud may be given in evidence to vacate a deed, on the plea of *non est factum,* if such fraud relates to the execution of the instrument, as, for example the essential element of delivery.

*L. D. Isbell* and *Campbell & Holt* for plaintiff in error, cited 18 Gratt. 801; 21 W. Va. 183; 8 W. Va. 553; Id. 568.

*Simms & Enslow* for the defendant in error, cited 14 Cal. 421; 15 N. J. L. 155; 7 Mead 188; 4 Watts 21; Perry *v.* Patterson, 15 Humph.; 23 Mich. 457; 37 Mich. 590; 16 Wall. 1; 8 Biss. 197; 6 Ala. 244; 70 Ga. 486; 59 Ill. 412; 24 Ind. 481; 10 B. Mon. 266; 4 La. Ann. 545; 54 Me. 506; 10 S. & M. 9; 17 Mo. 29; 7 Neb. 4; 31 Vt. 450; 32 Gratt. 595; 6 W. Va. 110; 21 W. Va. 201; 24 Tex. 174; 5 Jones Eq. 145; 47 N. H. 78, 81; 27 Gratt. 405; 18 Gratt. 801; 21 W. Va. 183.

Holt, Judge:

On the 26th day of June, 1890, the Sewing Machine Company, plaintiff below, defendant in error, brought in the Circuit Court of Cabell county this action of debt against J. E. Wood *et als,* defendants below, on what is called a "bond of guaranty" in which the Sewing Machine Company was obligee, Burlack & Hank obligors as principals, and Wood and Kahn obligors as their sureties.

Defendant Wood appeared and demurred to the declaration, and, that being overruled, he tendered and filed the common or general plea of *non est factum;* and defendant Kahn also filed a general plea of *non est factum;* defendant Wood claims that the instrument was not to be delivered as his deed except upon a certain condition, made known and required at the time of signing, and the condition was not complied with. Kahn claimed that before acceptance he ordered his name to be stricken off.

A jury was impanelled and sworn to try these issues,

evidence was introduced on each side, and at the conclusion the petitioner moved the court to strike out all defendants' evidence, because it was all in under objection, and to strike it all out as not being material to the issue, and as not competent and proper; and the court sustained the motion and struck out all the testimony of defendants, and defendants excepted; whereupon the jury found a verdict for plaintiff, and assessed the damages at four hundred and eighty dollars. And, defendants having moved the court to set aside the verdict, the court overruled the motion and gave judgment against the "said defendants," and defendants excepted.

Defendant J. S. Wood alone brings the cause here on writ of error.

Wood, the appellant, claims that the evidence stricken out, was competent and proper, material to the issue, and *tended* to prove that he signed the bond with the express condition that it was not to be delivered and become his bond, unless and until a second security as good as himself should be procured, and, after such security had been obtained, the bond returned to him, in order that he might judge for himself of such sufficiency; that, notwithstanding this agreement and condition, Burlack & Hank the agents of the obligee, and the persons with whom the agreement had been made, procured the signature of defendant, Lee Kahn, who then was and now is insolvent, and, without the knowledge of defendant, Wood, delivered the bond to plaintiff; and that subsequently defendant visited Cincinnati, and had a conversation with Clark the manager and general agent of the Sewing Machine Company, the plaintiff below and defendant in error, in which conversation Clark admitted to him that he knew the bond was a fraud before and at the time of the shipment by him of the company's goods to Burlack & Hank.

Five questions, one of substantive law, one of pleading proper, one of evidence, and two of procedure or practice, each of some interest, are presented by this record: (1) The doctrine of escrow and conditional .delivery, as far as it has been settled by our own cases on the subject, and that is far enough for the purposes of this case; (2)

the defence that can be made, under the common or general plea of *non est factum;* (3) the evidence admissible, as to fraud in the delivery of the instrument; (4) the competency, admissibility in evidence of the declaration, material if admissible, of the general agent to whom the whole management of the business has been committed by the corporation, made about such business within the scope of his employment and during its continuance, but not a part of the *res gestae* nor specially authorized; (5) how this Court is to consider the action of the Circuit Court, when plaintiff, having moved to strike out all the evidence of defendants as not being material to the issue, and as not competent and improper, and the Court sustains the motion, and strikes out all of the testimony of the defendants, and any of it turns out to be competent and proper, but of itself not sufficient to sustain the issue, or leaving the evidence wholly wanting on an essential point.

In the present attitude of the case, if we are to take the evidence as clearly insufficient as one of the grounds for the exclusion of it as a whole, it is not important whether we regard it as proving certain facts or as only tending to prove them, or whether we state them as facts proved, or as facts which the evidence tends to prove; but it can not escape observation and may be said here once for all, that there is but little conflict in the evidence, and that all the important and material facts are established beyond reasonable ground of controversy, if the testimony be competent, and that we shall assume for the present in stating the facts proved or the facts the testimony tends to prove, not caring, because it is not essential as the case stands, to discriminate in the mode of statement; and, as to the question of competency, that is reserved to another part of this discussion.

The Sewing Machine Company, the plaintiff below and the defendant in error, was and is a corporation, and as such appears throughout this whole transaction. It sues as a corporation created and existing by the laws of the State of Pennsylvania, and nowhere appears in the flesh, otherwise than in the person of S. E. Clark, of Cincinnati, the apparent sole manager and general agent. So far as

appears, the management of the whole business, or of this particular branch of it, was committed to him as a general agent, and that continuously throughout this whole transaction. He is the sole apparent representative of the corporate entity. He made the contract with Burlack & Hank; required them to give the bond of guaranty with two sureties, the bond sued on, refused for a time to accept the bond, sent it back to Burlack & Hank with directions to get Kahn to fill and swear to the blank printed affidavit on the back of the bond, which Kahn refused to do and ordered his name to be taken off. It was sent back to Clark without that being done.

While the place on the face of the bond for the names of the obligors was still in blank, unfilled, Burlack & Hank, dealers in sewing machines and pianos, together with witness T. E. Stout, who was their attorney, and also a notary present for the purpose of taking and certifying the acknowledgment of the bond, and the making of the affidavit on the back of the bond, on 19th July, 1889, went to the office of defendant Wood in the town of Huntington, and Woods then executed and acknowledged the bond on the express condition that it was not to be delivered until and unless another one as good financially as himself also executed it, and before delivery of the bond it was to be again shown to him, so that he might judge for himself of the financial ability of his intended co-surety. By the way it may be said this conditional delivery was proved by Wood, Stout and Hank, the whereabouts of Burlack not then being known, not even by his partner Hank. The bond was then taken to Lee Kahn, shown to be then insolvent, who executed the bond and acknowledged it in the presence of Stout, a subscribing witness, but he failed and refused to make the affidavit on the back, above the one made by Wood. But the bond was sent to Manager Clark at Cincinnati, his place of business.

Clark did not accept it, neither did he reject it, but, to use his own language, "holding it *statu quo*," sent it back to Burlack & Hank at Huntington, to get Kahn to swear to what he was worth, fill and sign and swear to the blank affidavit on the back.

It was again taken to Kahn by Burlack and Stout to get him to swear that he was worth one thousand dollars ; Kahn said he could not do that, and said "just take my name off." Stout then told Burlack "the thing is at an end so far as Kahn is concerned," and directed him to take the bond to defendant Wood.

The bond was never shown to defendant Wood after he had signed it, but without his knowledge or consent, was again sent back to Clark, who accepted it after he found that Wood was good. Clark let the firm of Burlack & Hank have goods to the value of four hundred and eighty dollars, between the 25th July and 31st August, 1889. On October 4, 1889, Wood sent to plaintiff, and Clark received from Wood a letter of that date, saying : "Hank & Burlack have dissolved partnership. I will not stand as surety on their bond any longer." In August, 1890, Wood saw Clark, the agent of the plaintiff company, and they talked about this transaction of his having the guaranty bond. Clark "acknowledged to Wood that he knew the bond was a fraud before he issued the goods," and, when asked by Wood why he issued the goods if he knew it was a fraud, replied "that he thought there would be no trouble, and that everything would go off smooth." When Wood wrote to Clark that he would stand on it no longer, he did not know whether any goods had been sold to Burlack & Hank or not.

Coke's definition of "a deed" is in substance a writing, sealed and delivered (2 Coke Litt. 171 b.) and now signing is necessary, in most cases, by statute of frauds.

"A deed is a writing or instrument written on paper or parchment, sealed and delivered, to prove and testify the agreement of the parties whose deed it is, to the things contained in the deed." 1 Shep. Touch. (by Atherly) 50.

If a man deliver a writing sealed to the party to whom it is made, as an escrow to be his deed upon certain conditions *etc.*, this is an absolute delivery of the deed, being made to the party himself;" for the delivery is sufficient without the speaking of words, * * * and tradition only is requisite ; and then when the words are contrary to the act, which is the delivery, the words are of none effect ; not

what is said, but what is done, must be regarded. But it may be delivered to a stranger, as an escrow *etc.*, because the bare act of delivery to him, without words, worketh nothing, Id. 58. "Where a deed·is delivered as an escrow, it is of no force till the condition is performed; and, though the party to whom it is made should get it into his possession before the performance of the condition, he can derive no benefit from it." Id. 59.

This may be taken as expressing, so far as it goes, our present law upon the subject of escrow papers.

The case of *Currie* v. *Donald*, 2 Wash. (Va.) 59, was decided in 1795. The questions discussed arose in the trial of an action of ejectment. Marshall (soon after Chief Justice of the United States) said in argument; "as to the delivery, it is a mere question of fact; the court can not say what weight of evidence shall be necessary to prove it." Id. 62. Washington (afterwards Associate Justice of the Supreme Court of United States) said in reply: "Upon the point of delivery, the arguments on the other side prove too much. They would go to establish what no professional man would directly aver ; and that is, that a delivery is not necessary at all." Id. 79. LYONS, J., delivering the opinion of the court, said: "The second objection is, as to the delivery. The parties have declared it to be sealed and delivered, and this is attested by the signatures of four witnesses, who could not afterwards be permitted to deny it." Id. 64.

*King* v. *Smith*, 2 Leigh, p. 157, was decided in 1830. The facts as stated in the syllabus are as follows:

"Porterfield agreed to join Harrison Waite as his surety in a forthcoming bond, and executed and delivered the bond as an escrow to the collecting officer, upon condition that King should also join in and execute the bond as co-surety ; and King agreed to join as surety in the bond and executed and delivered the same (to the collecting officer) as an escrow upon condition that Obed Waite also should join in and execute the bond as co-surety. But Obed Waite never united in the bond. Held (on injunction) that, upon this state of facts, neither Porterfield nor King were liable for any part of the debt in equity, any more than they would

be liable for any part of it at law, where the facts would amount to proof of *non est factum.*" "Special pleas of *non est factum*" is the term used by the court.

*Hicks* v. *Goode*, 12 Leigh. 479, was decided in 1842. "A bond prepared, intended and purporting on its face to be the joint bond of Good and Jones to five commissioners under decree in chancery for sale of land, was signed and sealed by Goode, and by him delivered to one of the obligees upon condition that Jones also should execute it; otherwise it should not be binding on Goode, but be null and void. Jones never executed it. In debt on the bond against Goode he pleads that it was an escrow, that Jones never executed it, and so it was not his deed (special *non est factum*). Held, the plea is a good bar." The doctrine held was that, if the deed upon its face imported that something more was to be done besides delivery, to make it a complete and perfect contract, according to the intention of the parties, then the doctrine of conditional delivery to the obligee did not apply.

*Stuart* v. *Livesay*, 4 W. Va. 45, was decided in 1870. This is the first West Virginia case proper. It was an action of debt on a bond, and the issue was made on the general plea of *non est factum.* The facts are as follows : There was a pre-existing debt due from Charles A. Stuart to Livesay, in which William R. Stuart and John Stuart, together with W. H. Shields and S. L. Feamster, were sureties. In lieu of this, Charles A. Stuart undertook to give to Livesay the bond sued on. William R. and John Stuart, respectively, signed the bond, with the distinct understanding that it was not to be binding upon them until it was signed by Shields, and Feamster also, and delivered it to the principal, Charles Stuart, their co-obligor, on that condition ; Charles Stuart delivered the bond to the obligee, Livesay, but informed him at the time of the understanding above mentioned between himself and William R. Stuart and John Stuart, and the obligee then took the bond and said he would himself procure the signatures of Shields and Feamster to it. This evidence was excluded from the jury by the court below under the plea of *non est factum.* The Supreme Court of Appeals held that "that

plea put in issue every fact essential to the existence of the bond. Delivery was an essential fact to such existence. * * * that Charles A. Stuart, in delivering the bond, acted as the agent of William R. and John Stuart * * * that the evidence was admissible under the general plea of *non est factum;* and for such error the judgment was reversed and the cause remanded."

*Newlin* v. *Beard,* 6 W. Va. 110 was decided in 1873. It was an action of debt on a bond executed by Beard and George Brown to Newlin to which the general plea of *non est factum* was pleaded. The bond sued on was for one thousand and five hundred dollars, on attorney's fees payable on the contingency of success in defeating a suit against Beard, principal, and Brown and others his sureties. It was signed "A. Beard, George Brown," each name followed by a scroll, and a third scroll to which there was no signature. It had been drawn by Newlin, signed and delivered by Beard to Newlin who kept it for a time, not shown. Newlin then handed it back to Beard requesting him to get as security his sureties who had been on the Jarrett bond, the one sued on and defended by Newlin. Beard took it and got George Brown to sign it, who signed on the condition that it should be signed by all the other sureties on the Jarrett bond; that the other sureties refused to sign and Beard then returned it to Newlin, who brought the suit. The court held that Beard was the agent of Newlin to get the other sureties on his bond.

The conditions made known to the agent at the time of delivery is notice to the principal, and he is bound by it.

A deed or bond signed, sealed, and delivered to the obligee or his previously constituted agent upon condition, is not the deed of the party signing until the condition is complied with. The court also held the defence admissible under general plea of *non est factum.*

The court relied upon and cited 2 Greenl. on Ev. § 297; *Ward* v. *Churn,* 18 Gratt. 812; *Deardorff* v. *Foresman,* 24 Ind. 481; *State* v. *Peck,* 53 Maine 284.

Moore, J., in delivering the opinion of the Court, says: "If the instrument upon its face indicates that it is not complete according to the intention of the parties, it puts the

obligee upon his guard," and if he takes the bond from the principal obligor he takes it subject to the defence of conditional delivery, not complied with, from the co-obligors.

If the delivery is upon a condition made known to the obligee, who assents by receiving it, he will not be allowed to treat the delivery as absolute and unconditional.

If the instrument is delivered to a third person, not a party to it, to take effect upon the happening of some event, and that person delivers it to the obligee before the event happens, it will not take effect; and it matters not that the obligee had no knowledge of the conditional delivery to the third person, the condition is valid whether known to the obligee or not. If the instrument is complete on its face according to the intention of the parties, and delivery is made to the obligee or his previously constituted agent, without notice that it is conditional, the obligee is not put on enquiry, whether it is the bond of all the signers or not, for it will be presumed that all the obligors authorized the delivery, and the obligee in such case has the right to treat it as absolute and unconditional.

The next case was *Lyttle* v. *Cozad*, 21 W. Va. 183, decided in 1882. In this case a "bond of a special commissioner to make a sale in a chancery cause is delivered by the commissioner to the clerk of the Court, and on its face appears to be a complete and perfect bond, which was executed by the sureties upon the condition that it should not be delivered to the clerk till it was executed by another person as surety, and when the clerk received the bond he was not informed of any such condition, or of its being in any way conditional. Held, this is a valid bond, and the sureties can not set up as a defence, when sued on it, this condition."

Our doctrine on the subject, as far as our present cases go, may be stated as follows:

(1) The instrument delivered to a stranger, to be delivered to the grantee or obligee upon condition, does not become the deed or obligation of the grantor or maker until the happening or performance of the condition. If the stranger delivers it to the obligee before that, the delivery is of no effect. The obligee must look to the depositary's

authority, and he can not rely upon the principle that the obligor has put it in the power of the stranger to do the wrong, that the obligee has been injured without fault on his part, and therefore the obligor must bear the loss ; such principle has in this case no application.

(2) If the instrument is delivered to the obligee by the obligor, being perfect on its face, then the verbal condition made at the time to qualify the delivery can not avail, for two reasons: *First*, we must, under such circumstances, look to the thing done, and not to the thing said ; and, *second*, a solemn deed is not to be exposed to the danger of falsehood and fraud, nor to the "uncertain, slippery memory of man."

But (3) if the instrument shows expressly a condition on its face, or is not on its face a complete and perfect instrument, so as of itself to put the obligee upon inquiry, then a delivery by one obligor to the obligee will not prevent the co-obligors, who signed on condition, from averring and proving such conditional delivery in bar of the action.

(4) If it be accepted and handed back, or not accepted and handed back, by the obligee to an obligor, the principal debtor, to get another to sign as surety or co-surety, and such other sign and deliver to such principal obligor on the express condition that it is not to be delivered until the condition be complied with, and the obligee have notice of such conditional delivery, and the condition not having been performed or complied with, such surety on condition may plead and prove it not to be his deed ; for, in such case, the principal debtor is *pro hac vice* the agent of the obligee, and the condition made known to such agent, at the time of such delivery to him, is notice to his principal, the obligee, and such obligee is bound by it.

(5) If a bond, with no imperfection on its face, be signed by the principal debtor, and then signed by another or others as his surety, and delivered to such principal obligor with the distinct understanding that it was not to be binding on them, until the condition was complied with by being signed by the two others named ; and the principal obligor delivers the bond to the obligee, informing him at the time of such understanding ; and the obligee takes the

83

bond, saying that he will procure the signature of the one required, and he fails to do so and brings suit, such one, signing on condition, may plead and prove that the instrument is not his deed.

But (6.) If such bond, perfect on its face, had in the case last supposed, been delivered by the principal debtor to the obligee, who was not informed of the condition, then the bond is valid, and binding on those who signed on condition; for, of the two, the surety shall bear the loss; for the reason that by his act he has enabled his co-obligor to deliver to the obligee, who is ignorant of the condition, and there is nothing on the face of the bond to put him on inquiry, and therefore such surety must bear the loss he has thus occasioned.

As to the mode of pleading delivery on a condition not complied with, or fraud in the delivery.

In this case defendant Kahn and defendant Woods each severally put in the general or common plea of *non est factum* to the deed on which plaintiff brought this action of debt.

The plea of *non est factum* is the general issue in the action of debt on a bond, but not always so in covenant.

Such general issue is a short and established form of denial, which denies, and thus puts the plaintiff to the proof of, every material allegation without the necessity of traversing such allegations in precise terms; being the issue, it brings the pleadings to a close, and concludes, of course, to the country.

A special plea in bar admits every material or traversable allegation which it does not traverse, and goes in avoidance of what it admits, and, as it does not close the pleadings, it must be left open for reply, and therefore concludes with a verification; that is, an offer to prove it. Every good defence which can not be pleaded specially may be given in evidence under the general issue; and every good defence which can not be given in evidence under the general issue may be specially pleaded, but a special plea in bar, amounting to the general issue—that is, a plea alleging new matter which is, in effect, a denial of the truth of the declaration—is, in general, improper and inadmissible. It goes in denial, not in avoidance; but it is good

in substance, and bad in form only.  But this latter rule is subject to this exception :  A special plea amounting to a justification—in other words, an entire special plea answering the whole declaration, and alleging matter of justification—is good, although as to part it amounts to the general issue; for matter of justification is matter of law which ought to be referred by plea to the court.  And therefore such matter, when it goes in avoidance of a material part, is allowed to be pleaded specially, though as to some part it may amount to a mere denial; for as the matter of one entire plea can not be separated by a reference of one part of it to the jury, and of the other part to the court, and as it would be at least as improper to refer matter of law to the jury as matter of fact to the court, the defendant is allowed to refer the whole matter to the court.  Gould, Pl. c. 6, p't 2, § 80.

When the defendant wishes to deny the execution of the bond sued on, he pleads *non est factum*, and no demurrer can, of course, lie to such general issue, and anything which fairly conduces or tends to prove that the deed is not his act is relevant to the issue, and therefore admissible in evidence; and, if the plaintiff desires a more definite or particular statement of defendant's ground of defence, he must, under section 40 of chapter 130 of the Code, move for defendant to file a statement of the grounds of his defence.

But if the defendant wishes to separate law from fact, and submit to the court the question of law—that is, whether a given state of facts shows the instrument not to be his act or deed—then he pleads a special *non est factum*, or the plea of *non est factum* with an *et sic*, " and so " it is not his deed, as that the writing was delivered to J. S. as an escrow, and so is not his act, in which case the denial must be a well-drawn inference from the special matter which precedes it ; otherwise it will be bad on demurrer, for on such special plea of *non est factum* no other matter is put in issue except such special facts alleged.  A demurrer to such plea is therefore analogous to a demurrer to evidence, and the plea will not be good if it only alleges some matter *ex post facto*, or something which only makes the in-

strument voidable, as that defendant executed it, but it was procured by fraud, or defendant was induced by fraud to execute it. Such matters must be specially pleaded in avoidance.

But although, among the essential elements of a deed signing has come in as a new one, and sealing has degenerated, with us, into a mere flourish with the pen, yet the one essential element of delivery remains, as it always was, one of the essential requisites to the valid execution of a deed; and "in a court of common law fraud may be given in evidence to vacate a deed on the plea of *non est factum*, if such fraud relate to the execution of the instrument,"— *Taylor* v. *King*, 6 Munf. 358—anything which shows it never was his deed, because never delivered by him.

"But fraud in the execution of a deed may be proved under the plea of *non est factum*," "inasmuch as the deed thus obtained is not in law the deed of the party sealing it." Gould, Pl. § 42, c. 6, p't 1. "So, also, the want of complete delivery, as in the case of an escrow, where the condition on which it was to be delivered over is not complied with," (Id. § 43) because without a complete delivery no deed can exist in law. See 1 Tidd, Pr. (8th Ed.) 701; Steph. Pl. (Tyler's Ed.) 171, 172, and notes. It was only after Reg. Gen. Hil. Trin. T. 3 & 4 Wm. IV. c. 42, that the plea of *non est factum* operated as a denial of the execution of the deed in point of fact only. See 1 Chit. Pl. (16th Ed.) p. 511. Whatever shows that the bond never was the deed of the defendant may be given in evidence upon *non est factum*. See 6 Rob. Pr. (New) 232 *et seq.*, and if it never was completely delivered, it never was his deed. So if the bond is not accepted, and defendant's name is then taken off or ordered to be taken off, and not properly delivered as to him afterwards, he can plead *non est factum*, and show that it is not his deed. See *Whelpdale's Case*, 5 Coke, 119, cited in 6 Rob. Pr. (New) 234. So, in the case of *Stuart* v. *Livesay*, 4 W. Va. 45, and in *Newlin* v. *Beard*, 6 W. Va. 110, it was held that a want of valid delivery could be given in evidence under the general plea of *non est factum*.

The next question is one of more interest, viz: as to the competency or admissibility of the declaration or

that the bond was a fraud, and that the manager knew it before he issued the goods. I do not think the position tenable that this fraudulent transaction was still *in fieri* when these admissions were made by Clark, the general manager, but I would not lay down the rule quite as broadly as Dr. Wharton lays it down; neither do I think that any discrimination should be made between natural persons and artificial persons, but the rules of evidence, as applied to agents in connection with the doctrine of agency, require to be adapted to the practical convenience of business men, and so moulded as to aid the fair and impartial administration of justice, and therefore must take into consideration whatever peculiarities there may be inherent in the nature and modes of action of these intangible entities, and a practical and a reasonable view of how they may be reached and acted upon.

With ordinary *bona fide* business corporations these questions give rise to but little trouble. Still we can not close our eyes to the fact that there are so-called corporations which for all practical purposes, where they do business, can not be reached at all, if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume. He is possessed of full authority to talk and act where there is anything to be gained, but he is not the proper man to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on—"now you see it, and now you don't." The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and of agency are not so narrow or so rigid that they may not be made to reach such cases.

In my view, and in reference to the point here involved, the true doctrine is that notice to the agent, while acting within the scope of his authority and in reference to the matter over which his authority extends, is notice to the principal; and that where a person or a corporation commits the management of the whole business, or a particular

branch thereof, to one who is a general agent representing his principal continuously, so far as the same may tend to show notice or knowledge, it is not necessary to the admission in evidence of the declarations of such general agent made during the agency within the scope of his employment and authority and in reference to the matter over which his authority extends, that such declarations should either have been part of the *res gestae* or should have been specially authorized.

In 2 Whart. Ev. (2d Ed.) § 1177 we find the following statement: "As has been already incidentally seen, a party who commits the management of his whole business, or of a particular line of his business, to an agent is bound by the admission of the agent as to the entire business committed to him; nor, when the agent is a general agent representing his principal continuously, is it necessary for the admission of such declarations, that they either should have been part of the *res gestae* or should have been specially authorized. Eminently is this the case with corporations."

The author refers to *Kirkstall Brewery Co.* v. *Furness R. Co.*, L. R. 9 Q. B. 468; *Morse* v. *Railroad Co.*, 6 Gray 450; *McGenness* v. *Adriatic Mills*, 116 Mass. 177; *Railroad Co.* v. *Blake*, 12 Rich. Law, 634. This is an exception to the general rule, because the reason of the rule does not apply.

I do not deem it necessary to discuss this general proposition further. The evidence shows that Clark was the general manager of this business for the plaintiff corporation— the one who conducted and managed the whole business throughout; that it was apparently within the scope of his authority—pertained to a matter peculiarly, if not exclusively, within his own knowledge; that is, that he had notice of the conditional delivery by Woods, and of what Kahn ordered to be done, viz., his name taken off before acceptance. It being a corporation represented in this matter solely by Clark, there was no other one to whom such notice could have been given; and, taken with the other evidence, it was admissible as tending to show notice or knowledge of the conditional delivery by Woods, and of the repudiation by Kahn, and should not, in the circumstances and to that extent, have been excluded from the jury.

It was not the province of the court, as matter of law, to say that Woods's letter wholly prevented him from making his defence; it was only evidence tending to show that he had delivered the bond, not by any means so conclusive as matter of law as to prevent his defence, nor to exclude any competent evidence tending to support his plea. "Plaintiff' moved to strike out all that evidence of defendant admitted subject to objection, and it asked the court to strike it all out, as not being material to the issue, and as not competent, and as improper, and the court sustained the motion, and struck out all the testimony of the defendants.

Competent evidence is that which is admissible and proper to be given on the trial of the cause. Of this the court is to judge; of its credibility and weight the jury is to judge. Some competent evidence was excluded. The admissibility or competency of evidence does not depend on the fact whether the party will or will not be able to furnish evidence on some other vital point. It does not depend on the sufficiency of the evidence. It leads to some confusion to exclude the whole evidence as incompetent, upon the ground that some is incompetent, and what may be left leaves the case wholly without evidence on a vital and essential point, and therefore clearly insufficient. But I take for granted that this would not be error, if we can say that it was properly excluded as a whole upon any ground, as for insufficiency; and I suppose that was the view the court took of the matter, that he ought to exclude the declaration of the manager or agent, Clark, as incompetent, and that left the defendants' case wholly without evidence on an essential point, and therefore insufficient.

But I am of opinion that without that, taking into consideration the fact that Clark had not received the bond, but had sent it back for Burlack & Hank to get Kahn's affidavit on the back, thus making them agents for that purpose; and considering that Kahn not only refused to fill the affidavit, but ordered his name erased; that these agents *pro hac vice* sent it back, with the blank affidavit not filled and the oath not made, the inference is quite natural and reasonable that they did their duty in giving some explanation accounting for the unchanged appearance of the bond, and

therefore, the true one of what Kahn said and did. Kahn does not appeal, but the ruling as to him on his plea has a direct bearing on the plaintiff's case.

Plaintiff shows by its general manager, Clark, that it did not at first accept the bond, but sent it back to the principal obligors, Burlack & Hank, to get Kahn to fill up and swear to his blank affidavit on the back of the bond. According to *Newlin* v. *Beard*, above, that made them the plaintiff's agent for that purpose, and notice to them was notice to the principal; and Kahn not only refused to swear, but forbade the redelivery of the bond, with his name on it, absolutely; told them to take it off. And if that were not so it would not have been unreasonable for the jury to have drawn the inference that, when Burlack sent the bond back to Clark with the affidavit still blank, and his direction in that regard not complied with, they should have explained why that was so, and have given some account of what Kahn said and did; and then it would have been a fraud on Wood, as well as on Kahn, to have accepted the bond, with Kahn's name stricken off, as he ordered to be done; and, when it came back with such a change on its face, would have, or ought to have put plaintiff on inquiry, and thus let in Wood's evidence of non-delivery. And what Clark said about fraud did tend to show, as matter of fact, that he had knowledge of what Kahn had said and done and refused to do, and, if so, that tended also to support the plea of defendant Wood, so that all his evidence should not have been excluded.

Then, if the jury could reasonably have drawn such inference, or if they could in argument have been fairly asked to do so, the plaintiff, through its agent and manager, Clark, had notice before receiving the bond that it was not Kahn's deed, and that his name ought to have been stricken off, and sent back with his name erased from the face; plaintiff, by its agent, had such notice as to put it or him on inquiry; and that was sufficient to let in, and efficiently too, defendants' evidence that Wood had signed the bond on an expressed condition, which had not been performed or complied with; for, if Clark knew that Kahn's name ought to have come off, then we treat, for

the purpose of notice, that as done which ought to have been done.

With this view of the evidence, the case was not wholly without evidence on any essential point, nor was the evidence so clearly insufficient as a whole as to bring it within the provision of the rule which makes it the duty of the court to rule on the evidence as insufficient, and virtually instruct the jury to find for the plaintiff. For these reasons I am of opinion to reverse the judgment, set aside the verdict, and award a new trial, in which opinion Judge ENGLISH concurs. But Judges LUCAS and BRANNON are of opinion that the rulings complained of were properly made, and that the judgment rendered by the Circuit Court is correct. Therefore said judgment stands affirmed by a divided court, all concurring in the syllabus.

BRANNON, JUDGE:

I can not concur in the view taken in the foregoing opinion that the declaration of the agent made in a conversation long after the delivery of the bond, and not a part of the *res gestæ*, and without special authority to make such declaration, is admissible. See *Coyle* v. *Railroad Co.*, 11 W. Va. 94; *Hawker* v. *Railroad Co.*, 15 W. Va. 628; 1 Greenl. Ev. § 184; Mechem. Ag. § 714. Nor does it appear that he was the exclusive agent or had that character to bring him within the exception specified in Judge HOLT's opinion to the general rule excluding admissions of an agent made after the close of the transaction. He who asserts the admissibility of the declaration as falling under an exception should clearly show that the agent held the character to justify the admission of the declaration, even assuming that, under our decisions, such an exception could exist.

Moreover, I do not think that the return of the bond to *Burlack & Hank* for the particular purpose for which it was returned—not to obtain additional obligors, but only to get Kahn's affidavit as to his pecuniary worth—made them agents of the company further, or bound the company with notice of Kahn's request to erase his name, as if made to an agent. Herein lies a difference between this case and *Newlin* v. *Beard*, 6 W. Va. 110. There the obligee handed

back the bond to the obligor to procure additional signers, and a signer annexed a condition connected with the act of signing, the very act for which the creditor handed back the bond to the principal, and the condition was expressed in connection with the signing.   Here Kahn had before signed and delivered the bond, and it was sent back to the obligor to do no act touching the bond further than to obtain the affidavit.   And, moreover, were Burlack & Hank thereby made agents, *pro hac vice,* I do not think that the expression of Kahn, "Take my name off," would affect a bond which he had before signed, sealed, and delivered.   I am authorized by President LUCAS to say that he concurs in this note.

AFFIRMED.